Miles William **EDINGTON**, Jr.,
Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–17227.

Court of Criminal Appeals of Oklahoma.
March 22, 1972.

Rehearing Denied May 8, 1972.

Sam Sullivan and G. Wendell Cathey, Durant, for plaintiff in error.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Miles William Edington, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Choctaw County, Oklahoma, for the offense of Murder; his punishment was fixed at Life imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Dorothy Young testified that on the evening of July 4, 1970, she was employed at the Texhoma Club, located approximately ten (10) miles out of Hugo, Oklahoma, next to the Red River. On the night in question, she was "taking the money at the door" and observed the defendant come to the club at approximately 9:00 p. m. The defendant was wearing bluejeans and a western shirt. He left for a period of time and then returned wearing a coat and trousers. A short time after he returned to the club, she heard two shots which sounded like firecrackers.

Officer Simms of the Paris, Texas, Police Department testified that at approximately 11:08 p. m., on July 4, 1970, he stopped the defendant for speeding, in Paris. The defendant was wearing a suit coat and was proceeding in a direction towards Hugo.

Joe Bill Dennis testified that he arrived at the Texhoma Club at approximately 10:00 p. m. on the evening in question. He sat at a table with Hyletha Edington, Sue Dixon and a boy from Dallas. He danced with Hyletha several times during the evening. He first observed the defendant when the defendant pulled Hyletha away from him on the dance floor. They said something to each other which he did not understand; the defendant reached under his coat, pulled out a gun and shot him in the chest. He "sort of fell back through the crowd," heard another shot go off and everyone started running.

Letha Ann Massey testified that she was at the club on the evening in question. She heard two loud noises, which appeared to be firecrackers. She next observed the defendant holding on to Hyletha's blouse and "he looked like he was fixing to drag her out and I could see blood all over her." (Tr. 27) She grabbed the defendant by his hair and told him to turn Hyletha loose. The defendant struck her.

C. D. Massey testified that on the evening in question, he was in the Texhoma Club talking to his ex-wife, Letha Ann. He heard some commotion and then two gunshots. He observed the defendant holding the deceased and saw a flash of the gun when it fired.

Randy Maynard testified that he was at the club on the evening of July 4. The first thing that attracted his attention was what appeared to be three shots. He next observed the defendant leaning over a girl lying on the floor. Defendant slapped the girl and said, "You goddamn bitch, you should have been home where you belong,"

and "Somebody help me get this bitch out of here." (Tr. 39) Ann Massey attempted to get the defendant away from Hyletha and the defendant struck her. Maynard then ran over and knocked the defendant over.

Deputy Moser testified that he investigated a shooting at the Texhoma Club. He took the defendant into custody as well as a nine millimeter automatic gun, two spent cartridges, and one spent bullet.

Dr. Woodruff testified that he examined Hyletha at the emergency room of the hospital, and, in his opinion, her cause of death was a gunshot wound.

For the defense, the defendant testified that he was married to Hyletha Edington and that she lived with him in an apartment in Paris, Texas, until June 29, 1970. On July 4, 1970, he went to the quarter horse races in Avery, Texas, and then visited with several friends. He arrived at the Texhoma Lounge at approximately 9:00 p. m., left to go back to Paris to change clothes, and returned. He danced with Ollie Gentry and noticed that Lisa was "right up against him." He started to walk Ollie back to the table and the next thing he remembered was kneeling over Lisa. He testified that he did not remember pulling a gun and shooting Lisa or Joe Dennis. On cross-examination, he testified that approximately one month prior to the Fourth of July, he became angry at Lisa dancing with a man at the Texhoma Club. He took the rings from her fingers, told her not to come home, and that she could get her clothes and leave the following day.

Trooper Carmen testified that he was present at the lounge when the defendant was placed under arrest and that the defendant "seemed to be confused at the time I was there." (Tr. 94) On cross-examination, he testified that the other persons he had observed who were apprehended for homicide also appeared confused.

Six character witnesses testified that the defendant had a reputation as being a peaceful law-abiding citizen.

Ollie Gentry testified that she was at the lounge on the evening in question and observed Lisa Edington dancing with Joe Bill Dennis, and "they were embraced with both arms around each other."

Floyd Kelley testified that he was employed at the Texhoma Club on the evening of July 4, and that after the shooting, he observed the defendant, who looked "like a crazy man to me."

Harvey Davidson, the operator of the Texhoma Club, testified that he observed the defendant shortly after the shooting and, in his opinion, the defendant did not know what was going on.

Nancy Davidson, the previous witness's wife, testified that she had also observed the defendant immediately after the shooting, and, in her opinion, the defendant did not know right from wrong.

■ The first proposition asserts that "the court should have sustained the demurrer to the evidence of the state and should have directed a verdict of not guilty and failing to do so should have sustained a motion for new trial and that said failure has resulted in depriving this defendant of due process of law." Defendant argues that this proposition is directed to the failure of the State to controvert or rebut the evidence introduced by the defendant on the defense of temporary insanity. We are of the opinion that the proposition is without merit. In Jones v. State, Okl.Cr., 479 P.2d 591, we stated in the second and third syllabi:

"On murder prosecution, the question of insanity at the time of the commission of the crime, presents a question of fact for the sole determination of the jury, and where there is any evidence tending to support the finding it is not the province of the appellate court to weigh the same.

"Sanity being the normal and usual condition of mankind, the law presumes that every person is sane; the State in a criminal prosecution may rely upon such presumption *without proof relative thereto*." (Emphasis added)

**404**

The second proposition contends that the trial court erred in refusing to give his requested instruction regarding insanity. The defendant's requested instruction advised the jury that in passing upon the question of defendant's sanity or insanity, it could take into consideration his entire conduct, including words spoken by him, the manner of his speech and appearance, disposition, pursuits, passion, his subjection to the stress of the death of his father and sister, his wife's infidelity, and the action he saw in combat in World War II. The trial court thereupon modified said requested instruction and excluded the above set forth conditions and considerations. We have carefully reviewed the requested instruction and the instruction given by the trial court and are of the opinion that the trial court properly refused defendant's requested instruction. The court's instruction fairly and correctly set forth the law applicable to the issue of insanity. We, therefore, find this proposition to be without merit.

The next proposition asserts "misconduct of the jury and that the verdict was by lot or means other than a fair expression of the opinion of the jurors." The Record reflects the jury requested to return to the courtroom for some information and the following transpired:

"BY THE COURT: Who is the foreman?

"BY MR. JANOE: I am, Your Honor. Some of us up there didn't understand all what we should have understood I guess. We voted and we all found the defendant guilty and some of them wanted to know how many years he would have to serve if he was given a life sentence.

"BY THE COURT: The Court cannot advise you about that. It would be reversible error for the Court to so advise you.

"BY MR. JANOE: Yes sir, that was a question they put to me.

"BY THE COURT: That is something I cannot advise you. Would the attorneys approach the bench.

"(Whereas, at this time, there was a hearing held with the attorneys outside the hearing of the Jury and the Reporter.)

"BY THE COURT: You may retire for further deliberation.

"BY THE JUROR MRS. PERCIVAL: Can we not talk about Manslaughter?

"BY THE COURT: You are instructed on that, yes.

"BY THE JUROR MRS. PERCIVAL: I just wanted to know, he can be charged with that, is that not right?

"BY THE COURT: If you find him guilty of that under the instructions you may so find." (Tr. 134–135)

Although this proposition is improperly before this Court in that defendant did not support this proposition with citations of authority, we are of the opinion that this proposition is without merit. There is nothing in the Record to reflect that the jury reached its verdict by casting lots as asserted by the defendant, but rather the jury had already ascertained the guilt of the defendant prior to returning to the courtroom.

The final proposition contends that the punishment is excessive. We have previously held that the question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case and the Court of Criminal Appeals does not have the power to modify sentence unless we can conscientiously say that under all facts and circumstances, the sentence is so excessive as to shock the conscience of the Court. LaRue v. State, Okl.Cr., 404 P.2d 73. In dealing with a similar question in Roberts v. State, Okl.Cr., 473 P.2d 264, we stated:

"In the instant case the punishment imposed could only have been life or death, and the jury imposed a life sentence. Under these circumstances we are of the

opinion that the punishment imposed was not excessive."

In conclusion, we observe the Record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.