**Billy Ray EVANS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–79–694.

Court of Criminal Appeals of Oklahoma.

Dec. 15, 1980.

Rehearing Denied Jan. 15, 1981.

Rex K. Travis, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen. of Oklahoma, C. Elaine Alexander, Asst. Atty. Gen., Oklahoma City, for appellee.

OPINION

BUSSEY, Judge:

On appeal from a conviction for Second Degree Murder in Washita County, Case No. CRF–79–2, wherein punishment was fixed at thirty (30) years' imprisonment the appellant, Billy Ray Evans, hereinafter referred to as defendant, has alleged in his first assignment of error that the evidence is insufficient to support the verdict of the jury for the reason that the testimony of

defense witnesses relating to defendant's mental condition was not sufficiently refuted by the State.

The State presented testimony by way of several witnesses regarding the discovery of the deceased victim, Shirley Joyce Shue, whose naked body was found lying adjacent to Interstate 40 in Washita County, Oklahoma. Her death was caused by several blows to the head with a lug wrench and exposure to the elements. In tracing her activities prior to her death it was learned that she and defendant had been drinking beer at the Pump Bar in Clinton. Near closing time the defendant and Ms. Shue decided to go over to the Tap Room, another drinking establishment in Clinton. Two friends of Ms. Shue's told her they would meet her at the Tap Room and suggested that they all go together. Ms. Shue and defendant went on ahead explaining that they would meet them at the Tap Room. Ms. Shue never arrived and was not seen again. The defendant was subsequently interviewed and admitted killing Shirley Joyce Shue. His handwritten confession relating the particulars of the killing was admitted into evidence.

A defense that defendant was insane at the time of the killing was presented through the testimony of Doctors William Allan and Nolen Armstrong who related that defendant was suffering from paranoid schizophrenia, had learning disabilities and occasionally experienced spells or periods of irrational behavior which were apparently precipitated by stress or anxiety. As a result of interviews and examinations of defendant, Doctors Allan and Armstrong testified that, in their opinion, the defendant was unable to distinguish right from wrong at the time he effected the death of Shirley Joyce Shue.

Although great reliance is placed by counsel for defense, upon the testimony of Doctors Allan and Armstrong that defendant was unable to distinguish right from wrong at the time of the commission of the offense we believe the principle of law determinative of this issue, although the facts differ from the instant case, was expressed in *Dare v. State*, Okl.Cr., 378 P.2d 339 (1963), where, in the body of that opinion, we stated:

It is next urged that the evidence was insufficient to support the verdict of the jury and in support of this contention, the defendant argues that when the testimony of Doctors Charles Smith and Jim Berhman [footnote omitted] (psychiatrist on the staff of Griffin Memorial Hospital, Norman) was introduced on behalf of defendant a reasonable doubt as to the sanity of the accused was raised and it became incumbent for the state to introduce expert testimony establishing the defendant's sanity beyond a reasonable doubt.

This assertion presumes that the jury was bound to give credence to the opinions of Doctors Smith and Berhman. This presumption is not the law of this jurisdiction, for we have held:

(1) 'The testimony of experts is not conclusive on the issue of mental capacity since the law makes no distinction in weighing evidence between expert testimony and evidence of other character.' (*In re Smith*, Okl.Cr., 326 P.2d 835);

and

(2) 'On murder prosecution, the question of insanity at the time of the commission of the crime, presents a question of fact for the sole determination of the jury, and where there is any evidence tending to support the finding it is not the province of the appellate court to weigh the same.' (*Tarter v. State*, [Okl.Cr.,] 359 P.2d 596).

To this same effect see: *Jones v. State*, Okl.Cr., 479 P.2d 591 (1971).

We observe from the record that on January 2, 1979, O.S.B.I. agents Hanks and Langley had occasion to observe the defendant who appeared to them as a normal individual showing no signs of violence or aggression. The defendant's attitude was cooperative. He communicated intelligently, appeared clear headed, lucid and demonstrated no signs of inability to understand. In this same connection, the State present-

ed testimony of Doctor Garcia, who, over a period of thirteen days, observed, tested and examined defendant while he was under commitment under Western State Hospital. Doctor Garcia determined that defendant was within normal ranges and was able to counsel with and assist his attorney in defense of the pending charge. Further, Doctor Garcia testified that in his professional opinion it was impossible to predict with any certainty the ability of the defendant to distinguish right from wrong at the time of the homicide.

■ In the instant case there was evidence presented from which the jury could legitimately conclude that defendant was sane and could distinguish right from wrong at the time the crime was committed. Since the question of insanity at the time of the commission of a crime presents a question of fact for the sole determination of the jury, the jury in the instant case was not bound by the opinions of Doctors Allan and Armstrong and were not persuaded thereby. For these reasons, we deem defendant's first assignment of error to be without merit.

■ In his second and final assignment of error defendant contends that the trial court erred in admitting into evidence his confession and, in support thereof argues that it was involuntarily given after lengthy interrogation and deprivation of sleep and food. This contention is totally without merit.

We need only observe that the defendant was initially contacted around 4:30 p. m. in Canute, Oklahoma at which time he was not placed under arrest. Having complete and total freedom of movement the defendant agreed to accompany police officers to Clinton, Oklahoma. No interrogation of any kind had been conducted. At approximately 6:30 p. m. on this date a pretest stage of a polygraph examination was administered defendant after he had been properly advised of his rights against self-incrimination and executed a proper and formal waiver thereof. The trial court conducted a lengthy in-camera hearing where, at the conclusion thereof the trial court ruled that

no evidence or testimony of any kind had been produced or presented supporting the contention that the defendant had been badgered, mistreated or deprived of food or the opportunity to use the telephone. Absent any showing that defendant's statements and confession were involuntarily made, induced through coercion or fear, or tainted in any manner they were admissible into evidence as the trial court held. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Dennis v. State*, Okl. Cr., 561 P.2d 88 (1977).

For the above and foregoing reasons we are of the opinion that the judgment and sentence appealed from should be and the same hereby is AFFIRMED.

CORNISH, P. J., and BRETTY, J., concur.