Rita Silk NAUNI, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–81–87.

Court of Criminal Appeals of Oklahoma.

Sept. 19, 1983.

Rehearing Denied Oct. 18, 1983.

Douglas Parr, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Rita Silk Nauni was convicted in Oklahoma County District Court by a jury of Manslaughter in the First Degree and Shooting with Intent to Kill, and was sentenced to

one hundred (100) years' and to fifty (50) years' imprisonment, respectively. The convictions arose out of a shooting incident in which one airport police officer was killed and another was wounded.

Appellant arrived at Will Rogers World Airport in Oklahoma City with her 10-year-old son on the morning of September 19, 1979 from Los Angeles, California. Appellant wished to travel to Lawton, Oklahoma, and decided to set out on foot. As she and her son traveled north of the airport on South Meridian Avenue, they discarded some clothes to lighten their baggage. Airport police officers Garland Garrison and Teresa Wells were dispatched to investigate a littering complaint. After they approached the appellant and her son, the officers exited their vehicle to further investigate the ownership of the discarded clothing. The testimony is conflicting as to whether the appellant and her son tried to run from the officers, but it is in accord that the officers attempted to place them in the vehicle.

Officer Wells testified that appellant was placed under arrest for assault on a police officer after she began swinging her arms at Officer Garrison and started cursing, spitting and trying to bite both officers. A scuffle ensued and as Officer Wells tripped into a ravine, the strap securing her service revolver broke. Appellant kicked Officer Wells in the stomach and got control of the gun. Again the testimony is conflicting as to the order of the shootings, but appellant proceeded to shoot Officer Garrison in the chest, and Officer Wells in the leg, and then left the scene in the officers' vehicle. She was later stopped and arrested by Oklahoma City police officers. Officer Garrison bled to death from his wounds.

■ The appellant argues that the trial court erred in overruling her challenge to the jury panel. Section 633, Title 22 of the Oklahoma Statutes, 1981, provides:

A challenge to the panel can be founded only on a material departure from the forms prescribed by law, in respect to the drawing and return of the jury, or on the intentional omission of the sheriff to summon one or more of the jurors drawn, from which the defendant has suffered material prejudice.

The burden is upon the defendant to show that the illegality or wrong which is the basis of the challenge has caused the defendant to suffer material prejudice. *Henderson v. State,* 95 Okl.Cr. 342, 246 P.2d 393 (1952) (quoting *Houston v. State,* 63 Okl.Cr. 49, 72 P.2d 526, 528 (1937)). See also *Toosigah v. State,* 464 P.2d 942 (Okl.Cr.1969); *Moore v. State,* 461 P.2d 1017 (Okl.Cr.1969), and *Wolfchief v. State,* 461 P.2d 949 (Okl. Cr.1969).

Appellant has failed to demonstrate material prejudice. The affidavit of appellant's attorney attached to her motion in the trial court states that while racial minorities constitute 17% of the Oklahoma County population, less than 5% of such minorities serve on juries in Oklahoma County. We are unable to glean from the record, however, the racial composition of the jury panel called to try appellant's case. Notably, defense counsel exercised a peremptory challenge to exclude the one person who claimed in the record to be part Indian, the same race as appellant.

■ Even assuming that the allegations of the affidavit were true, the fact that the venire and jury roll do not mirror the racial composition of the community does not constitute material prejudice. *Bennett v. State,* 448 P.2d 253 (Okl.Cr.1968) (relying on *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, (1964)). Appellant was not entitled to access to the Court Clerk's jury records under 22 O.S. 1981, § 638, having failed to present a sufficient challenge under the statute. We hold that the trial court did not err in overruling appellant's motion.

Appellant next asserts as error the trial court's refusal to allow individual voir dire of jurors out of the presence of the other jurors. Appellant contends that due to the extensive media coverage of the shootings, and in light of the fact that the shootings involved police officers, the death penalty was sought by the State, and the appellant

is a Native American, individual voir dire was necessary in order to expose the bias of potential jurors. Appellant's motion was bolstered by the summary testimony of an expert witness in her offer of proof.

We said in *Palmer v. State,* 532 P.2d 85, 88 (Okl.Cr.1975) that:

The purpose of voir dire examination is to ascertain whether there are grounds to challenge prospective jurors for either actual or implied bias and to permit an intelligent exercise of peremptory challenges. (Citations omitted.)

We held in *Morrison v. State,* 619 P.2d 203 (Okl.Cr.1980), that whether private individual voir dire should be conducted is a matter within the discretion of the trial court. We hold that the trial court did not abuse its discretion in this case. An extensive and lengthy voir dire examination was permitted. The transcript of voir dire amounts to nearly 870 pages of the record. Each juror sworn stated that he or she could be fair and impartial. Jurors are not required to be totally ignorant of the facts and issues. It is sufficient that the jurors can declare under oath that they are able to act impartially and fairly upon the matters submitted to them. 22 O.S.1981, § 662; *Shapard v. State,* 437 P.2d 565 (Okl.Cr. 1967).

Furthermore, while appellant was tried for murder in the first degree, she was convicted of manslaughter in the first degree, a lesser included offense. Appellant has failed to demonstrate that she was prejudiced by the denial of her request for individual voir dire.

The appellant next contends that the trial court erred in unduly restricting the type of questions her counsel was allowed to ask potential jurors on voir dire. We stated in *Jones v. State,* 508 P.2d 280, 282 (Okl.Cr.1973) that:

[T]he trial court has broad discretion to rule on questions to be asked on voir dire of jurors which are subject to essential fairness. The forms of the questions put to the prospective jurors on voir dire examination is a matter within that discre-

tion and it will not be interfered with on appeal where no prejudice is shown.

See also *McFatridge v. State,* 632 P.2d 1226 (Okl.Cr.1981).

As noted earlier, the court allowed an extensive and lengthy voir dire examination. Appellant lists in her brief the "most glaring" examples of restrictions alleged to have prejudiced her. Upon a review of the record, and in particular these examples, we find that defense counsel were only restricted when their questioning became repetitive, irrelevant or regarded legal issues the trial court had to instruct the jury upon. There was not an abuse of discretion by the trial court.

Appellant's fourth assertion of error is that the trial court committed error in holding voir dire late into the evening. On the second and third day of the trial, voir dire began at 9:00 a.m. and ended at 10:00 p.m. and 9:30 p.m. respectively. She complains that her attorneys' weariness caused her to be deprived of effective assistance of counsel, thus depriving her of a fair trial and due process of law.

In *Bingham v. State,* 82 Okl.Cr. 5, 19, 165 P.2d 646, 654 (1946), this Court stated:

The question of procedure to be followed during the trial; including the time of starting and recessing each day is necessarily a matter resting in the sound discretion of the trial court, and, before this court would interfere to set aside a verdict because certain of the evidence had been received at a night session, there must clearly be shown that such action of the court resulted prejudicially to the defendant and constituted an abuse of judicial discretion.

Defense counsel objected to continuing voir dire into evening. His objection was that appellant had an ulcerous stomach, and being in court long hours would worsen her condition. The record fails to demonstrate that her condition did worsen or that she was unable to be present and assist counsel.

Counsel also complained of his own tiredness, which he claims prevented him from providing effective assistance of counsel.

To the contrary, the record reflects that defense counsel did a commendable job, despite the long hours, and the trial court complimented his work. In *Gamble v. State*, 576 P.2d 1184 (Okl.Cr.1978), a case in which the actual trial was continued into the evening hours we noted that defense counsel could not reasonably contend that his client was not properly defended when the job performed was in fact commendable. Appellant notes also that one of the jurors complained of tiredness. But the record reveals that the trial court adjourned court soon thereafter. This argument must fail.

■ Appellant next contends that the trial court erred in editing certain hospital records admitted into evidence. At trial, defense counsel sought to introduce the hospital records in their entirety. The trial court allowed them into evidence, but required that all psychiatric opinions and diagnoses be omitted by literally cutting them from the pages. The trial court reasoned that the opinions and diagnoses of non-testifying medical personnel should not be admitted without cross-examination. Section 2403 of Title 12 of the Oklahoma Statutes provides:

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.

Opinions and diagnoses of mental or psychiatric conditions have been generally considered too complex and speculative to be admitted without cross-examination. See *Fry v. State*, 529 P.2d 521 (Okl.Cr.1974) and *Bennett v. State*, 448 P.2d 253 (Okl.Cr.1968).

We hold that the trial court properly exercised its discretion. Generally, diagnosis of mental conditions is a subjective and abstract process. A psychiatrist testified in this case that it is very common for two doctors to diagnose the mental condition of the same patient differently. Since the ultimate issue was appellant's sanity, the probative value of this evidence is substantially outweighed by the danger of unfairness in the absence of cross-examination.

■ Appellant's sixth assignment of error is that the trial court improperly excluded testimony relating to appellant's sanity at the time of the shootings, and her prior drug use. Appellant's counsel was prevented at one point from questioning her further about her use of drugs prior to the shootings. But the record shows that the appellant had previously testified to the same matter and the trial court felt it was repetitive. We said in *Lott v. State*, 586 P.2d 70, 73 (Okl.Cr.1978) that:

> It is well established that a trial judge has wide latitude in conducting a trial, including the right to question a witness for the purpose of clarifying testimony and the right to interrupt an improper line of questioning, so long as he does not indicate to the jury his views of the issues in contention. (Citation omitted.)

The discretion to stop repetitive questioning is also given in 12 O.S.1981, § 2403, supra, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of needless presentation of cumulative evidence. The trial of this case extended over a fifteen day period with the testimony of forty-two witnesses being presented. Refusing to allow examination of the witnesses in a repetitive manner was not an abuse of the trial court's discretion. Nor did the trial court err in not allowing repetitive questioning on surrebuttal. Defense counsel had previously examined its expert witness as to the relationship between appellant's symptoms and her drug usage. A trial judge need not allow a rehash of testimony given during the case-in-chief. *Plumlee v. State*, 361 P.2d 223 (Okl.Cr.1961).

■ The third exclusion of testimony complained of was the answer of appellant's psychiatrist to a hypothetical question asking whether he felt appellant knew the nature and consequences of her actions at the time of the shootings. The court did not believe that the question was properly phrased under the *M'Naghten* rule. The

*M'Naghten* test pertains to whether the accused had the mental capacity to distinguish right and wrong, as applied to the particular act, and to understand the nature and consequences of such act. *Hair v. State,* 532 P.2d 72, 76 (Okl.Cr.1974). Any error which might have occurred was harmless because defense counsel did elicit the desired response upon rephrasing the question so as to ask the essential part of the test, whether appellant could distinguish between right and wrong.

Appellant contends that the trial court erred in admitting into evidence a postcard found by police officers in luggage discovered in the stolen airport police vehicle after appellant's arrest. The postcard was addressed to appellant's son, and was sent by appellant from North Dakota on September 8, 1979. The suitcase was searched without a warrant and the card seized after appellant and the suitcase were in police custody. Appellant claims this search was unreasonable and the evidence should have been suppressed.

 We agree that the warrantless search of the suitcase was unreasonable. *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). The Fourth Amendment to the United States Constitution has been held to protect against warrantless searches of containers in which a person has a reasonable expectation of privacy. Once the container is seized by police, the inspection of its contents is not incident to arrest nor justified by exigent circumstances. Therefore, the search was unlawful. See *United States v. Schleis,* 582 F.2d 1166 (8th Cir.1978) and *State v. Kaiser,* 91 N.M. 611, 577 P.2d 1257 (App.1978).

The postcard in question reads as follows: Just thought I'd drop you a few lines. I miss you and I hope your [sic] being a good guy. I love you. Your Moma [sic] Rita.

 The appellant claims that its admission undermined her insanity defense by showing she was content in her relationship with her husband and that she had a good time on a vacation she took during the months prior to the shooting incident. But the content of the card has little or no relevance to the facts or issues in this case. Its introduction into evidence was harmless and does not warrant reversal. *Wofford v. State,* 581 P.2d 905 (Okl.Cr.1978).

 Appellant next asserts as error the introduction of a pre-death photograph of Officer Garrison. At trial, defense counsel stated he had no objection to its introduction. Appellant has preserved no error, and we will not consider this issue since there is no fundamental error. *Johnston v. State,* 555 P.2d 629 (Okl.Cr.1976).

 Appellant next assigns as error comments by the trial judge which allegedly prejudiced her before the jury. However, many of the comments were not made within the hearing of the jury and could not have prejudiced appellant, and will not be considered herein.

We said in *Reed v. State,* 335 P.2d 932, 936 (Okl.Cr.1958) that:

The trial judge, during the entirety of the trial, should forbear with dignity indulgence in any remarks which might tend to influence the jury in any respect.... Basically, he is a referee or umpire of a contest between two opposing sides in a case at bar.... He should never invade the province of the jury, and by all means it would besmirch the dignity expected of a trial judge to intimate his feeling in the matter by actions, innuendo or remarks.

 It appears that for the most part the comments complained of were the judge's statement of reasons for his rulings. We find that none reach a prejudicial level and as a general rule, were even-handedly directed towards the State and appellant. None were of such nature as to deny appellant a fair trial nor revealed the trial judge's views on the issues involved in the case.

 Appellant next contends that the trial court should have directed a verdict in her favor since the State failed to introduce evidence to prove beyond a reasonable

doubt the sanity of appellant once she introduced evidence which created doubt of her sanity at the time of the offense charged. We said in *Dare v. State*, 378 P.2d 339, 346 (Okl.Cr.1963) (quoting *Tarter v. State*, 359 P.2d 596 (Okl.Cr.1961)) that:

"On murder prosecution, the question of insanity at the time of the commission of the crime, presents a question of fact for the sole determination of the jury, and where there is any evidence tending to support the finding it is not the province of the appellate court to weigh the same." (Citation omitted).

See also *Evans v. State*, 621 P.2d 1171 (Okl. Cr.1980) and *Jones v. State*, 479 P.2d 591 (Okl.Cr.1971). The evidence is conflicting regarding appellant's sanity at the time of the shooting. Appellant introduced the testimony of one expert and several laymen regarding her mental condition and conduct prior to, at the time of, and after the shooting incident. On rebuttal the State introduced the testimony of three expert witnesses who examined appellant while she was hospitalized at Central State Hospital for observation following her arrest. Each of the State's experts testified that they were of the opinion that appellant knew right from wrong at the time of the shootings. The weight to be given the testimony of each witness is a determination to be made by the jury. We hold that there was sufficient evidence to support the jury's determination of sanity and it will not be disturbed on appeal.

Appellant next assigns as error the refusal of the trial court to order the State to turn over materials which appellant argues contained exculpatory or mitigative evidence. Appellant cites *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) for the proposition that suppression of exculpatory evidence upon request denies a criminal defendant due process of law. Appellant made pretrial requests for production of the unsworn statements of her son, Derrick Nauni, and of Officer Wells. She also requested production of all police reports of the incident in question.

Unsworn statements of prosecution witnesses are considered to fall within the work-product privilege and are not discoverable. *Ray v. State*, 510 P.2d 1395 (Okl.Cr.1973). This privilege extends as well to police investigative reports. *Hickerson v. State*, 565 P.2d 684 (Okl.Cr.1977). While the work-product privilege may not be applied in derogation of a criminal defendant's constitutional rights to disclosure of evidence favorable to the defendant, *Castleberry v. Crisp*, 414 F.Supp. 945 (W.D. Okl.1976), such evidence must be material to either guilt or to punishment before it is discoverable. *Brady, supra*.

Each of those items was in fact disclosed at trial. Officer Wells testified during the State's case-in-chief, and the defense called Derrick Nauni as a witness. Appellant claims that the testimony of these two witnesses as to the order in which the shootings occurred was conflicting and therefore, favorable to her. However, this evidence was made available to the jury and appellant was given full opportunity to explore their testimony at trial. This was sufficient to vindicate appellant's rights. *Brewster v. State*, 445 P.2d 534 (Okl.Cr. 1968).

Appellant claims that the police reports were exculpatory in that they indicate that police officers were called to a crime involving a "mental patient", on the day of the shootings. The record reveals that this evidence was introduced at trial. Lieutenant Kenneth Smith testified he received a call on the morning of the shootings to aid officers with a mental patient. Appellant introduced dispatch logs which showed that airline personnel needed assistance with a mental patient. Appellant had ample opportunity to cross-examine the State's witnesses in this regard and her rights were not violated. *Brewster, supra*.

The next assertion of error is that the trial court should not have instructed the jury as to voluntary intoxication. Appellant claims it was not supported by the evidence and was therefore, improper. If there is no evidence in the record to support an instruction, it should not be given. *Dil-*

*worth v. State,* 611 P.2d 256, 259 (Okl.Cr. 1980). Appellant argues that since the tests performed in order to detect the presence of drugs in her body on September 19 and September 20, 1979, were negative, and since she did not request the instruction, it was error for the trial court to give it to the jury.

We find that appellant's argument is unsupported by the record. There is extensive testimony regarding appellant's past drug usage. During her testimony, she stated that she had consumed alcoholic beverages in the Los Angeles airport terminal prior to departing for Oklahoma City. There was evidence of acute drug intoxication in the early part of September, 1979. The trial court must instruct upon issues in evidence. *Dennis v. State,* 556 P.2d 617 (Okl.Cr.1976). There was, therefore, no error in instructing the jury on voluntary drug intoxication.

Appellant asserts that the trial court committed fundamental error in failing to deliver an instruction on Oklahoma law regarding commitment of persons acquitted by reason of insanity. We stated in *Thomsen v. State,* 582 P.2d 829, 832 (Okl.Cr. 1978), the statute providing for possible commitment following acquittal by reason of insanity, presently codified as 22 O.S. 1981, § 1161, "is merely a procedural statement of disposition subsequent to the verdict and is immaterial to the process of rendering a verdict concerning the sanity of the accused." See also *Boutwell v. State,* 659 P.2d 322 (Okl.Cr.1983). We find no error since potential commitment was immaterial to the process of rendering a verdict concerning appellant's sanity.

Appellant next complains that the instructions to the jury impermissibly shifted the burden of proving insanity to her. The instruction in question provides that the law presumes every person to be sane and that upon a plea of insanity, that the defendant has the burden to introduce sufficient evidence to raise in the jury's mind a reasonable doubt of the defendant's sanity. The instruction explains that the State must then prove that the defendant was sane beyond a reasonable doubt.

Appellant cites the case of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) for the proposition that such presumption of sanity is conclusive and is automatically erroneous. However, in that case, the presumption was that one intends the ordinary consequences of his acts. Intent to commit the crime was an element which the State was required to prove, and the Supreme Court believed that the jury could interpret this presumption to mean that defendant had to prove he lacked the requisite mental element.

Insanity is an affirmative defense which appellant has the burden of raising. The State need not disprove insanity as an element of the crime. The United States Supreme Court held in *Patterson v. New York,* 432.U.S. 197, 210, 97 S.Ct. 2319, 2327, 53 L.Ed.2d 281, 292 (1977):

> We thus decline to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused.

Sanity is the normal and usual condition and the State may rely on this presumption without proof until a criminal defendant raises a reasonable doubt thereof. *Cox v. Page,* 431 P.2d 954 (Okl.Cr.1967). This presumption does no violence to the concept of due process of law. *Patterson,* supra.

Appellant cites as error a number of comments made by the State during closing argument. However, appellant only objected to one of the statements at trial. Therefore, she has waived her right to object to most of the statements, there appearing no fundamental error. *Jones v. State,* 555 P.2d 1061 (Okl.Cr.1976).

The statement objected to at trial reads as follows:

> Teresa Wells' case will be decided by you, which one; or if it's not guilty, turn her loose. I told you that's how I play the game. I must be totally fair. If you think this has not been proven, turn her

loose. And if you think that she was insane when she did all that, turn her loose.

Appellant claims that this statement was made to arouse societal alarm and was an improper comment. While such comment may tend to disparage the defense of insanity, it was not of such a nature as to have improperly influenced the verdict or punishment. See *Vital v. State*, 640 P.2d 1372 (Okl.Cr.1982). Appellant's rights were not affected so as to require modification. The judgments and sentences are AFFIRMED.

BUSSEY, P.J., and BRETT, J., concur.