Jackie M. ROUBIDEAUX, a/k/a
Jacqueline M. Roubideaux,
Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–701.

Court of Criminal Appeals of Oklahoma.

Aug. 22, 1985.

Rehearing Denied Sept. 12, 1985.

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen. Tomilou Gentry Liddell, Asst. Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Jackie Roubideaux was convicted in Comanche County District Court of Murder in the First Degree for the suffocation death of three and one-half year old Mary Carpitcher. Punishment was assessed at life imprisonment.

On April 10, 1976, the body of Mary Carpitcher was found in a refrigerator within an abandoned house in Lawton. Two children playing in the house heard a noise coming from the refrigerator and opened its door. Out jumped Tina Carpitcher, Mary's twin sister, who had escaped death by breathing through a crack at the refrigerator's door. She was ten years old at the time of trial and testified that the appellant, a good friend of her Aunt Thomasina, had put her and her sister into the refrigerator. She testified that

Jackie had entered their grandmother's living room where they were watching television on the afternoon of April 8, 1976, and told them to come with her. They walked several blocks to the house where they were told to get into the refrigerator and that their Aunt Thomasina would come to get them later and take them for ice cream.

█ Appellant first assigns as error the trial court's refusal to excuse for cause a prospective juror who was an employee of the District Attorney's office. The venireman, Ms. Brock, stated that she was an administrative assistant who handled payroll, purchasing, and insurance matters for the office. She stated that she was not involved with any aspect of the case or its investigation. Ms. Brock stated she could serve as a fair and impartial juror in the matter.

We find no error in the trial court's ruling. There is no statutory basis to challenge this venireman because of her employment and she claimed during voir dire that she had not received any knowledge or opinion of the case as the result of her work.

Appellant's reliance upon authority pertaining to law enforcement officers and excuse for cause is unfounded, 38 O.S.1981, § 28, as is her reliance upon our statute of implied bias based upon certain relationships, 22 O.S.1981, § 660. Appellant's assignment must fail as well because this juror was excused by using a peremptory challenge and she has not otherwise shown prejudice. *Allison v. State,* 675 P.2d 142 (Okl.Cr.1983).

█ Appellant further assigns as error the trial court's rebuke of her counsel when he continued to voice his objection to the court's refusal to excuse Ms. Brock for cause. The transcript indicates the chastisement was made out of the hearing of the jury and was not otherwise improper. *Nauni v. State,* 670 P.2d 126 (Okl.Cr.1983). This assignment of error is without merit.

Approximately one and one-half years after the death of Mary Carpitcher, a third

Indian baby was abducted and placed in a refrigerator in an abandoned house not many blocks from where Mary's body had been found. Appellant babysat for this child, Nima Carter, on a regular basis prior to her death. There existed quite a bit of circumstantial evidence that indicated appellant committed this crime and which the trial judge allowed to be introduced at her trial for the murder of Mary.

■ Appellant claims the evidence was improperly admitted for several reasons. First, she claims that the court misapplied the exceptions to the rule against admitting evidence of other crimes and allowed it into evidence when none of the exceptions applied. While it is true that the court did not consistently make correct rulings of law in applying the exceptions to the evidence of the Carter murder offered by the various witnesses, the State primarily relied upon the exceptions of identity and common scheme or plan and the court properly allowed its introduction on these bases.

Appellant's principal contention, however, is that the exception of common scheme or plan cannot be applied unless the commission of one crime facilitated the other. Since the Carter death did not occur until a year and a half after Mary's, one could not have been committed to help facilitate the commission of another. But this Court has not so narrowly construed this permitted departure from the other crimes evidence rule. It is true that there must be a visible connection between the crime on trial and the other crime, yet this connection may be established by evidence of a method of operation so distinctive as to demonstrate a plan common to both crimes. *Driskell v. State*, 659 P.2d 343 (Okl.Cr.1983); *Driver v. State*, 634 P.2d 760 (Okl.Cr.1981); *Jett v. State*, 525 P.2d 1247 (Okl.Cr.1974).

In the present case, the facts indicate a peculiar plan which was also present in the Carter case.

In both cases:

1) The appellant had babysat and spent time with the victims;

2) The victims were abducted from their homes;

3) The appellant had access to the homes of the victims;

4) The victims were very young;

5) The victims were American Indians;

6) The victims were placed in refrigerators and suffocated;

7) The victims were found in abandoned houses where the appellant had previously been observed;

8) The victims lived and died in houses in the same neighborhood where the appellant lived.

Furthermore, as appellant concedes in her brief, evidence of similarity in facts of two crimes, or modus operandi, is probative of the identity of the perpetrator. 12 O.S. 1981, § 2404(B); *Miller v. State*, 629 P.2d 370 (Okl.Cr.1981). She argues that the facts of the two cases were not distinctive enough so as to constitute a "signature." But as previously discussed, we find the facts were sufficiently peculiar to the two murders to be properly admitted. See, *Driskell*, supra, and *Turnbow v. State*, 451 P.2d 387 (Okl.Cr.1969).

Appellant next challenges the introduction of evidence of the Carter murder on the basis that there did not exist clear and convincing evidence that she committed the homicide. This is the correct standard of proof and the other crime need not be proved beyond a reasonable doubt before it is properly admissible. *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979).

■ Our review of the evidence indicates that testimony concerning the Carter killing was properly introduced. Among the evidence admitted was the testimony of the clerk of a convenience store located 200–300 feet from the Carter residence who was personally acquainted with appellant. She stated that not only did she see appellant several times near the Carter residence within a few hours of the estimated time of abduction, she and Jackie had had a discussion that afternoon wherein Jackie made a menacing comment against the baby's father. After she had talked with

him in the store and though she learned that he had hired a different babysitter for the evening, Jackie stated, "they told me that was my job. Well, if that's the way he wants it, so be it." Evidence was admitted that the intruder entered the home without force through an outside door which would not lock, and then walked through the room in which the parents were sleeping in order to reach the child. Appellant was familiar with the layout of the home and probably knew too that the door would not lock. There was a great deal of other circumstantial evidence which when taken together provided clear and convincing evidence that appellant had committed the offense.

Finally under this assignment of error, appellant claims that the probative value of the evidence was outweighed by its prejudicial impact and should not have been admitted on this basis, citing *Burks,* supra. We disagree. Its value went beyond showing appellant was a person who deserved to be punished. As previously discussed, the evidence was strongly probative of a plan and of identity. This assignment is without merit.

■ Appellant had been suspected of placing false fire alarms for a period of time near the location of the Carpitcher murder. She had been closely watched by various firemen. Appellant's motion in limine to exclude evidence of these offenses was sustained by the trial court, but four firemen were allowed to testify at trial concerning their observations of Jackie frequently walking around in the neighborhood. This evidence was offered by the prosecution to rebut her evidence that she always stayed home in her free time and never roamed the neighborhood. Appellant's counsel was not allowed to cross-examine these witnesses as to their reasons for watching her. Appellant complains that this evidence should not have been admitted because it could have suggested to the jury that appellant was guilty of other offenses, particularly arson.

We have consistently held that when the implication of another crime is apparent

only to defense counsel, there is no error in admitting relevant evidence with a possible implication that a criminal defendant has committed another offense. *Mahorney v. State,* 664 P.2d 1042 (Okl.Cr.1983). In fact, there was evidence introduced that appellant was suspected of setting false fire alarms, but it was intentionally elicited from her own witness on direct examination. Any potential error was overcome by her evidence. Nor can appellant claim she was denied her Sixth Amendment right to cross-examine witnesses when the denial was made by the trial court based upon appellant's motion in limine. The State is not at risk for error invited by the defense. *Pegg v. State,* 659 P.2d 370 (Okl.Cr.1983).

Appellant sought to introduce at trial the testimony of Jesse Carpitcher as recorded in the preliminary hearing transcript because he did not appear at trial per a subpoena issued to him. When appellant's counsel first sought to introduce this evidence during the case-in-chief, he was not even certain whether a subpoena had been issued to Carpitcher. The court ruled the transcript could not be admitted because the defense had failed to show unavailability of the witness, and held a record could be made at the end of all the evidence. The record to be made in such circumstances is that of actual unavailability of a witness in spite of good faith and due diligence in securing the presence of the witness at trial and that the transcript sought to be admitted bears sufficient indicia of reliability to be trustworthy. *Allison v. State,* 562 P.2d 883 (Okl.Cr.1977).

On surrebuttal, appellant's counsel again sought to introduce Carpitcher's preliminary hearing testimony. The court again denied the request though then defense counsel had information that a subpoena had been issued for Carpitcher. The court again stated that a record could be made at the end of all evidence, but defense counsel later failed to put on any evidence to make a record.

■ Appellant now claims the trial court erred in refusing to hear evidence on her attorney's efforts to secure Carpitcher's

presence at the time offered. However, the trial court has discretion in conducting the trial. *Nauni v. State*, 670 P.2d 126 (Okl.Cr.1983). Appellant has failed to show an abuse of the trial court's discretion. When it was made apparent that appellant could not meet her burden for admission of the evidence, it was not error to delay the making of a record until a subsequent opportunity. Appellant then neglected to preserve any possible error by failing to make any record at all. *Ferguson v. State*, 645 P.2d 1021 (Okl.Cr.1982). This assignment is unfounded.

■ The trial court allowed during the State's rebuttal a psychologist to testify regarding Tina's credibility. This expert had examined her several times in the year following the kidnapping, and then re-examined her the week prior to the trial. She testified that she was of the opinion Tina was a reliable "reporter" and that she recalled the events from her own memory. The defense had repeatedly challenged Tina's credibility and tried to establish that Tina was only parroting a story of the incident which she had been taught.

Appellant argues that an expert's opinion should not be allowed concerning weight or credibility of the evidence since this is a matter the jury is equally competent to decide themselves, citing *Wacoche v. State*, 644 P.2d 568 (Okl.Cr.1982). This is the general rule, but the correct test in allowing testimony of an expert witness is whether:

> Scientific, technical or other specialized knowledge will assist the trier of fact to understand or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise.

12 O.S.1981, § 2702.

The decision of whether an expert witness is allowed to testify rests within the discretion of the trial court. And, its decision will not be upset by this Court in the absence of abuse of its discretion. *Barnhart v. State*, 559 P.2d 451 (Okl.Cr.1977).

The defense in this case repeatedly and vigorously tried to impeach the testimony of the only eyewitness to the crime. The age and lapse of time since the incident made Tina's testimony suspectible to particular attacks. Her testimony had also acquired a sing-song tone. Due to the unique circumstances of the case as above set forth, the expert's evaluation of Tina's memory and ability to report the incident was of help to the jury in determining whether the child had been taught the story which she learned and recited by rote or whether she truly remembered the event and reported it of her own recall. There is no error.

■ Next, appellant asserts the trial court erred in not giving to the jury the particular instruction regarding circumstantial evidence which she requested. The requested instruction explained that a conviction founded on circumstantial evidence must exclude every reasonable hypothesis other than guilt. The trial court did instruct the jury concerning direct and circumstantial evidence, which were both present in the trial. We have previously held that when both types of evidence are introduced, the jury need not be specially instructed of circumstantial proof. *Grimmett v. State*, 572 P.2d 272 (Okl.Cr.1977). The instructions correctly stated the applicable law, and we find no abuse of the trial court's discretion in selecting the instructions which it gave to the jury. *Nealy v. State*, 636 P.2d 378 (Okl.Cr.1981).

Finally, appellant asserts that the trial court erred in placing undue pressure on the jury to reach a verdict. She claims that the trial judge improperly led the jury to believe that they could not go home until they reached a verdict. We have reviewed the transcript of the proceedings and find no error.

At 11:30 p.m. of the evening the jury deliberated, the judge called the jury into the courtroom and asked whether they wished to continue deliberating or to break until the morning. The judge explained he would need to arrange for hotel accommodations if they retired for the night. The

foreman requested an additional hour and a half to deliberate, and the jury did then reach a verdict within that time.

When the jury had reported earlier in the evening that they were deadlocked, the judge told them they should take more time because of the length of the case. This statement together with the reference to staying in a hotel do not appear to be an attempt to force the jury to reach a verdict. Rather, the court was properly exercising its authority to direct the course of the proceedings. The length of time the jury is allowed to deliberate is a matter within the trial court's discretion. *Jones v. State*, 456 P.2d 610 (Okl.Cr.1969).

Finding no error warranting reversal or modification, judgment and sentence is AF-FIRMED.

PARKS, P.J., dissents.

BRETT, J., specially concurs.

PARKS, Presiding Judge, dissenting:

I must respectfully dissent. I am of the opinion that the evidence relating to the death of Nima Carter was improperly admitted. I would reverse and remand this case for a new trial, one in which evidence of this unrelated subsequent crime would be barred.

In holding that the trial court did not err in admitting circumstantial evidence of a similar crime committed one and one half years after the crime for which appellant was tried, the majority, in my opinion, extends 12 O.S.1981, § 2404(B) to impermissible limits. We have repeatedly, and consistently, held that there is

... a well-established rule recognized substantially by all courts that evidence of a separate and similar offense is not admissible against the accused on trial for another specific offense; that *when the accused is put on trial for one offense he is to be convicted, if at all, by evidence which shows him guilty of that offense alone, and proof of guilty of one or more similar offenses unconnected for that which he is on trial*

*must be excluded.* The foregoing rule is fundamental. (Emphasis added).

*Roulston v. State*, 307 P.2d 861 at 867 (Okl.Cr.1957). The Legislature has agreed this is a fundamental rule of law, and has stated at 12 O.S.1981, § 2404 B that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

The several reasons for this rule center on the accused's right to a fair trial based on evidence that tends to prove that he committed the crime with which he is charged. He should not have to answer for his entire life history, nor should precious judicial resources be wasted on deliberation of evidence which is normally cumulative and always prejudicial. Furthermore, evidence of other alleged offenses may profoundly affect the jury. It may confuse the jury with collateral issues and lead to a conviction because the accused is a "bad person" who deserves to be punished. It may also complicate the jury's understanding of the requisite burden on the State to prove the accused is guilty beyond a reasonable doubt, since the evidence of the other offense need only be proved by clear and convincing evidence, a lesser standard of proof. Therefore, it follows that "evidence which in any manner shows or tends to show that he committed another crime wholly independent, even though it be a crime of the same sort, is irrelevant and inadmissible." *Jett v. State*, 525 P.2d 1247, 1249 (Okl.Cr.1974).

However, there are purposes for which evidence of other criminal acts may be admitted. The Legislature has recognized these as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." 12 O.S.1981, § 2404(B). Even under these exceptions, the evidence is not admissible unless there is a visible connection between the crimes. *Roulston v. State, supra* at 868. Moreover, these exceptions "do not supercede the time-honored precept of law [against admission] *and are to be carefully*

*limited and guarded ...*" *Id.* at 867. (Emphases added).

In the present case, the majority finds a visible connection between the crimes "by evidence of a method of operation so distinctive as to demonstrate a plan common to both crimes." *Supra* at 37. I first note that each of the cases cited, *Driskell v. State, supra, Driver v. State, supra,* and *Jett v. State,* are cases involving sexual undertones. These cases are indicative of the fact that, rightly or wrongly, "the courts tend to find distinctive similarities in sex cases more readily than in other situations." Clearly et al., *McCormick on Evidence,* § 140, p. 560, n. 20 (1984). *See also* 2 A.L.R.4th 330. Also, these cases are distinguishable on other facts. The evidence of another crime in this case involves a criminal act which occurred *subsequent to,* rather than prior to, the offense for which appellant was on trial. The two offenses herein were not part of a series of acts continued over a long time period. This case involves two separate, distinct, independent crimes, and we have held that

> [m]ere similarily between the crime for which a defendant is being tried and past crimes is not enough to establish admissibility under the "common plan or scheme exception."

*Oglesby v. State,* 601 P.2d 458, 459 (Okl.Cr. 1979). Rather, the common scheme or plan exception, may be used only

> "if [the other crime] has a tendency to ... support the conclusion that there was a plan or system which embraced both that and the crime for which he is charged [s]uch as where the crime is committed to prepare the way for another and the commission of the second crime is made to depend upon the perpetration of the first."

*Roulston v. State,* 307 P.2d at 869. I believe our statement in *Oglesby v. State, supra,* is equally applicable here, in that "it would be absurd to argue that the appellant committed one [murder] to help facilitate the commission of another [murder]. Nor is it plausible to say evidence of one

[murder] should be admitted to show a propensity to [murder]." *Id.* at 459.

Nor is this evidence relevant to show identity. In *Selfridge v. State,* 617 P.2d 237 (Okl.Cr.1980), Judge Brett correctly stated that

> "[t]he victim had already identified the appellant so that evidence of [the] other alleged [offense] was not only cumulative but also dangerously prejudicial."

*Id.* at 239. Mary Carpitcher's sister had already indentified appellant as the person who placed Mary and herself in the abandoned refrigerator. This is not a case comprised of wholly circumstantial evidence, in which this evidence would be relevant. Here, as in *Selfridge v. State, supra,* the evidence was merely cumulative, but extremely prejudicial.

Therefore, I dissent.

BRETT, Judge, specially concurring.

It is my opinion that the trial court erred in refusing to excuse Ellen Brock for cause. Arguably Brock comes within the purview of 22 O.S.1981, § 660(2), which lists persons who may be challenged for implied bias, as she was employed by the district attorney who instituted the prosecution. Unquestionably she falls within the spirit of the law that guarantees fair and impartial jurors to sit in judgment of an accused.

It is true that Brock stated she could serve as a fair and impartial juror in the matter, but as this Court eloquently stated in *Scrivener v. State,* 63 Okl.Cr. 418, 75 P.2d 1154, 1156 (1938):

> It may be possible that a juror may be so peculiarly constituted that [external factors] would have no influence upon his action in the [case], but this question must be disposed of upon the assumption that all jurors possess the characteristics common to ordinary men ....

The competency of a juror is, under the statute, a question to be determined by the court in the exercise of a sound discretion. The discretion given, however, is not intended to deprive the defendant of his right of trial by an impar-

tial jury, and the statute cannot be regarded as changing in any degree the essential qualifications which jurors must possess.

The fact that these jurors stated on their voir dire that they had formed no opinion as to the guilt or innocence of the defendant and that they could and would act impartially and fairly upon the matters to be submitted to them, was wholly immaterial.

They could not be the judges of their own impartiality.

To expect a juror, in essence, to vote against her employer and then face him at work on a daily basis is senseless. Regardless of the type position she held, she was an employee of the prosecutor. While it is possible that Juror Brock's relationship with the district attorney would not and did not influence her deliberation, she should not have been put in this potentially compromising situation.

In the case of *Thompson v. State*, 519 P.2d 538 (Okl.Cr.1974) this Court held that the trial court erred when it refused to excuse a juror who was a brother to one of the prosecution's witnesses in chief. The close relationship between the two made the juror subject to a challenge for cause. Judge Bussey wrote for the Court reversing the cause in *Manuel v. State*, 541 P.2d 233 (Okl.Cr.1975), because, unbeknownst to defense counsel until jury deliberations had begun, one of the jurors was the husband of the district attorney's secretary, a relationship that "approached being a basis for challenge for cause." *Id.* at 237.

These cases are closer to the one at bar than the case relied upon today by Judge Bussey, *Allison v. State*, 675 P.2d 142 (Okl. Cr.1983). The relationship between the prosecutor and the juror in that case was far more attenuated than in the present case. In the *Allison* case, a juror's mother-in-law had worked as a legal intern in the district attorney's office during a break of law school the summer before Appellant Allison was brought to trial. In this case the juror was a present employee of the district attorney.

The rule that all doubts regarding juror impartiality must be resolved in favor of the accused, *see, e.g., Tibbetts v. State*, 698 P.2d 942 (Okl.Cr.1985), is intended to apply to trial courts as well as to this Court. It is my belief that the trial court should have applied this rule and excused Juror Brock for cause. To refuse to do so was an abuse of discretion.

Nonetheless, I do not think reversal on this issue is in order since the appellant has not demonstrated the injury that must accompany an error to merit reversal. The appellant did exhaust her peremptory challenges but did not complain that there remained on the jury someone she would have removed had she still had the peremptory challenge she was compelled to use to excuse Juror Brock. *See Thompson v. State*, 519 P.2d 538 (Okl.Cr.1974).

On the issue of the other crime evidence, I agree with Judge Bussey that the evidence of the Nima Carter murder was admissible, but in my opinion it was admissible only under the identity exception to 12 O.S.1981, § 2404(B). It is clear from reviewing the circumstances of the two homicides that whoever committed one probably committed both. The prosecutor pointed out fifteen similarities between the two cases:

1. Each victim was very young (one was three and one-half and the other one and one-half.)

2. Each victim was female.

3. Each victim was American Indian.

4. Appellant knew each victim and her family through baby-sitting.

5. Appellant had gone places with each victim's family.

6. Appellant had access to each victim.

7. Each victim was taken from her home.

8. Appellant had been in each victim's home within twenty-four hours of the victim's disappearance.

9. Appellant was familiar with the layout of each victim's home.

10. Appellant lived within walking distance and in the same neighborhood as each victim.

11. Each victim's body was found in appellant's neighborhood.

12. Each victim was found in an old abandoned house.

13. A refrigerator was the instrument of death in each case.

14. Each refrigerator was the old-fashioned lock-up type that predated the magnetic door.

15. The cause of each death was asphyxia.

The prosecutor told the jury in closing argument that the evidence of the Carter homicide was introduced because, in light of all the similarities, the evidence surrounding that crime could be considered in determining whether the appellant killed Mary Elizabeth Carpitcher. The prosecutor reminded the jury that the appellant was not on trial for the death of Nima Carter.

After carefully reviewing the record, I am persuaded that the evidence was helpful to determine whether the appellant locked Mary Carpitcher in the refrigerator. Thus, the evidence was logically relevant. And the evidence was more probative than prejudicial, so it was legally relevant.

Like Judge Parks, I was particularly concerned about the fact that the Carter homicide occurred *after* the Carpitcher homicide. More troublesome is that the two acts were separated by so much time. The greater the distance of time between the incidents, the more similar the crimes must be to demonstrate that the probative value of the other crime evidence is so great that it outweighs the prejudicial nature. The prosecutor met that burden in this case. The two crimes are remarkably similar.

In his dissent Judge Parks quoted the *Selfridge v. State* opinion wherein I stated the other crime evidence was cumulative and dangerously prejudicial since the victim had already identified the assailant. However, *Selfridge*, 617 P.2d 237 (Okl.Cr. 1980), is distinguishable. In that case

there was not a sufficient nexus to tie the crime charged to the incidents that occurred subsequently; the other incidents did not fall into any of the exceptions to the prohibition against other crimes; and most importantly, the young child identifying the assailant was able to testify within six months after the kidnapping. In the case at bar, the three-year-old was ten years old when the case finally came to trial. Among other things her story had taken on a sing-song quality, making her especially vulnerable to impeachment. The other crime evidence was therefore not needlessly cumulative on the issue of identity.

For these reasons, I concur in the affirmation of the judgment and sentence. I would further hold that the State is now precluded from prosecuting the appellant for the death of Nima Carter for the reasons enunciated in *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980).