Sylvia JONES, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15192.

Court of Criminal Appeals of Oklahoma.

Jan. 6, 1971.

Don Anderson, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge:

Sylvia Jones, hereinafter referred to as defendant, was charged by Information in the District Court of Oklahoma County with the crime of Murder; she was tried by a jury who returned a verdict finding her guilty and assessed her punishment at life imprisonment in the state penitentiary. From this judgment and sentence a timely appeal has been perfected to this Court.

The evidence of the State was to the effect that on the 4th day of August, 1964, the defendant was seen by several persons shortly after 8:00 p. m. driving her car onto Rife Range Road in Oklahoma City, and placing it so that it was perpendicular to the direction of the road. The car was situated so that its back wheels were almost in a ditch to one side of the road, and a space of approximately two feet remained between the front of the car and an embankment on the other side of the road. Shortly after the defendant had placed her car in this position, a small boy on a bicycle approached the defendant's car and in order to pass, rode in front of the car. The defendant drove forward, knocking the boy from his bicycle. The mother of the boy, Loretta Calhoun, when informed of what had happened, ran to her son. The defendant then got out of her car, pulled a gun on the deceased, Loretta Calhoun, and fired at her six times. The defendant got into her car and drove home. Several of the witnesses helped the injured woman to the front porch of a nearby house and called an ambulance and the police. Loretta Calhoun died at the hospital of gunshot wounds. The defendant was arrested about 9:00 p. m., and placed in custody. The defendant's husband, Leonard Jones, gave the police a .22 caliber revolver when the defendant was arrested. The revolver had six spent shells in the chambers, and had apparently been recently fired.

Counsel for the defendant stipulated that Loretta Calhoun died on the 4th day of August, 1964, as a result of gunshot wounds administered by the defendant by means of a .22 caliber revolver. The defense was that the defendant was insane at the time of the incident, and several witnesses were presented who testified to that effect; chief among them was Dr. Ernest Shadid, a psychiatrist and Assistant Superintendent of Griffin Memorial State Hospital at Norman, Oklahoma. His testimony related to the mental condition of the defendant who had been committed numerous times for observation and treatment by court order, after the homicide occurred. Dr. Shadid testified that the defendant had a Schizophrenic reaction with Paranoid features and described the treatment administered. Other witnesses for the defendant were members of the family who testified that the defendant often thought the neighbors were staring at her, or were trying to poison her. They testified that the defendant thought she heard people walking on the roof of her house, and showed other signs of irrational behavior. The defendant recounted the incident on the 4th day of August, but her testimony differed greatly from that of the other witnesses. All of the defense witnesses, other than the defendant, testified that in their opinion the defendant was unable on August 4, 1964, to distinguish right from wrong.

The single assignment of error urged on appeal is that the evidence is insufficient

to support the verdict of the jury for the reason that the testimony of the defense witnesses relating to the mental condition of the defendant, was unrefuted by the State. Great reliance is placed by counsel for defense, upon the testimony of Dr. Shadid whose opinion was, in substance, that the defendant was unable to distinguish right from wrong at the time of the commission of the offense.

▇▇▇ While the facts differ from the instant case, we believe that the principal of law determinative of this issue was expressed in Dare v. State, Okl.Cr., 378 P.2d 339, where, in the body of the opinion, we stated:

"It is next urged that the evidence was insufficient to support the verdict of the jury and in support of this contention, the defendant argues that when the testimony of Doctors Charles Smith and Jim Behrman [footnote omitted] (psychiatrist on the staff of Griffin Memorial Hospital, Norman) was introduced on behalf of defendant a reasonable doubt as to the sanity of the accused was raised and it became incumbent for the state to introduce expert testimony establishing the defendant's sanity beyond a reasonable doubt.

This assertion presumes that the jury was bound to give credence to the opinions of Doctors Smith and Behrman. This presumption is not the law of this jurisdiction, for we have held:

(1) 'The testimony of experts is not conclusive on the issue of mental capacity since the law makes no distinction in weighing evidence between expert testimony and evidence of other character' (In re Smith, Okl.Cr., 326 P.2d 835);

and

(2) 'On murder prosecution, the question of insanity at the time of the commission of the crime, presents a question of fact for the sole determination of the jury, and where there is any evidence tending to support the finding it is not the province of the appellate court to weigh the same.' (Tarter v. State, Okl.Cr., 359 P.2d 596)."

It is readily apparent that the testimony of defense witnesses did not raise a reasonable doubt in the minds of the jurors in that they concluded that the testimony of Dr. Shadid, based on observations made subsequent to the commission of the crime, may have established a Paranoid Schizophrenic condition at the time of the examination, but that his conclusion that the defendant did not know right from wrong at the time the homicide was committed, was not credible and should be disregarded.

▇▇▇ In the instant case there was evidence from which the jury could conclude that the defendant was normally sane, but had episodic remissions of insanity. In Cox v. Page, Okl.Cr., 431 P.2d 954, we stated, in referring to evidence of occasional insanity, that:

"Sanity being the normal and usual condition of mankind, the law presumes that every person is sane; the State in a criminal prosecution may rely upon such presumption without proof relative thereto."

For all the reasons above set forth, we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and NIX, J., concur.