Sharon Kate CLARK, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–83–253.

Court of Criminal Appeals of Oklahoma.

April 29, 1986.

Rehearing Denied May 27, 1986.

Patti Palmer, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

The appellant, Sharon Kate Clark, was convicted of the crime of Second Degree Murder in the District Court of Cherokee County in Case No. CRF–80–108 and was sentenced to ten (10) years to life imprisonment, and she appeals.

In the summer of 1980 the appellant's twelve-year-old son played on a little league baseball team and his step-father, appellant's husband, was the coach. A group of mothers that frequently attended the games made remarks about the playing ability of several of the players, including appellant's son.

Appellant testified that she thought of the women as a "gang" and believed that they wanted to "destroy" her son. However, the members of the group all testified that nothing extraordinary was said to appellant's son, and each denied having anything against him.

On July 10, 1980, the appellant purchased a pistol and a box of cartridges. On July 15, she decided to pour motor oil on one of the women in retaliation for alleged derogatory remarks which she believed were made to her son. Before going to the ballpark that day, she concealed the revolver in her pants and filled a large cup with oil. After she arrived at the ballpark, she walked over to the bleachers and threw the motor oil in the face of one of the women. The victim, who was a guest at the game, immediately attacked the appellant, and the pair tumbled off the bleachers. As the two women struggled, the appellant shot and killed the victim.

Immediately after the shooting two men disarmed appellant and restrained her until the police arrived.

After the appellant shot the victim she exclaimed "oh damn, I shot the wrong bitch!" When asked what she thought her son would think of her actions, the appellant stated, "I left him at home." The appellant also told the women that they should not pick on her son, but should pick on someone their own size. After uttering numerous vulgar and profane statements, the appellant told one of the women, "We got the wrong person, the bullet was meant for you," and "I had no quarrel with his woman, I wanted to get the Murphy bitch."

When the police arrived the appellant was transported to the police station where she became unruly and had to be carried up the stairs. In her cell, the appellant laid on the floor in a fetal position, cried, called for her "mama," and remained non-communicative.

As her first assignment of error, the appellant contends that the trial court

erred in conducting portions of her trial during her absence. The appellant was permitted to leave the courtroom at defense counsel's request on two occasions, and she remained in a room adjoining the courtroom when the jury returned to the courtroom after deliberation because she believed people would laugh at her.

It is well settled that a defendant has both a statutory and a constitutional right to be present at all stages of his trial. 22 O.S.1981, § 583; *Parker v. State*, 556 P.2d 1298 (Okl.Cr.1976). However, when one voluntarily absents himself from the trial this right is waived. *Roberts v. State*, 523 P.2d 1150 (Okl.Cr.1974); *Warren v. State*, 537 P.2d 443 (Okl.Cr.1975). On all three occasions when the appellant was absent from the trial, she left voluntarily and on two occasions she left at defense counsel's request. Appellant now alleges that the trial court should not have allowed her to leave the courtroom without any warning or inquiry. However, the United States Supreme Court rejected the same argument in *Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973), and held that:

Petitioner had no right to interrupt the trial by his voluntary absence, as he implicitly concedes by urging only that he should have been warned that no such right existed and that the trial would proceed in his absence. The right at issue is the right to be present, and the question becomes whether that right was effectively waived by his voluntary absence.

It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, see *Stack v. Boyle*, 342 U.S. 1, 4-5, 72 S.Ct. 1, 3-4, 96 L.Ed. 3 (1951), entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us, as it did to the Court of Appeals, 'that a defendant who flees from a courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—would not know that

as a consequence the trial could continue in his absence.' [*United States v. Taylor*,] 478 F.2d 689, 691 (1973).

We are of the opinion that the appellant was voluntarily absent from the trial, and waived her right to be present. This assignment of error is without merit.

■ In her second assignment, the appellant alleges that the trial court abused its discretion by failing to initiate a competency determination on its own motion. We disagree.

Title 22 O.S.1981, § 1175.2(A) states in pertinent part: "The Court may, at any time, initiate a competency determination on its own motion, without an application, if the court has a doubt as to the competency of the person." The appellant argues that the testimony at trial concerning her past behavior during and subsequent to the slaying, and her outbursts of crying during the trial, should have raised a reasonable doubt as to her competency to stand trial. However, 22 O.S.1981, § 1175.1(1) defines "competent" or "competency" as

[T]he *present* ability of a person arrested for or charged with a crime to understand the nature of the charges and proceedings brought against him, and is able to effectively and rationally assist in his defense. (Emphasis added).

Both psychologists who testified, one of whom was appellant's own expert, stated that they believed the appellant was presently competent to stand trial. This Court has held that the finding of the trial court will not be disturbed on appeal unless a clear abuse of discretion is shown, *Beck v. State*, 626 P.2d 327 (Okl.Cr.1981). Finding no abuse of discretion, this assignment of error is without merit.

Next, the appellant argues that the State presented insufficient evidence to prove that the appellant was sane beyond a reasonable doubt.

■ The M'Naghten rule is the test for insanity in Oklahoma. 21 O.S.1981, § 152. The initial burden is on the defendant to establish a reasonable doubt as to his sanity. *Munn v. State*, 658 P.2d 482

(Okl.Cr.1983). If the defendant establishes a reasonable doubt of his sanity, the presumption of sanity vanishes and it is incumbent upon the State to prove beyond a reasonable doubt that the defendant could distinguish between right and wrong at the time of the offense. *Id.* at 484.

▮ In the present case, the appellant presented the testimony of a clinical psychologist who had interviewed the appellant nine (9) months after the murder and diagnosed her as psychotic. The expert testified that in his opinion the appellant could not distinguish between right and wrong at the time of the slaying. The appellant also presented the testimony of an attorney who attempted to interview her at the jail shortly after the shooting occurred. He testified that when he entered her cell he observed her lying on the floor in a fetal position. He further stated that he attempted to talk with her but that he received no response except for some mewing sounds, and that appellant began to call for her "mama." The appellant testified that she thought of the women who attended the games as a "gang" and believed that they wanted to "get rid of," "hurt" and "destroy" her son. She believed that they had access to weapons because one of them was a policeman's wife. She testified that she remembered throwing the oil in the woman's face and struggling with the victim, but that she did not remember shooting the victim or making any remarks after the shooting.

The State, on the other hand, presented the testimony of a clinical psychologist who did not personally examine the appellant, but who studied the psychological report prepared by the appellant's expert. From that report, he concluded that the appellant's expert did not conduct sufficient testing to make a proper determination of the appellant's sanity at the time of the offense. The State additionally introduced evidence to prove that appellant had taken several psychology courses in preparation for a Masters Degree in Education which she received in 1980. The State's expert further testified that it is possible that a person could, in nine months from the time that the act was committed, develop a convincing presentation that would appear to be mental illness. Finally, the State introduced the testimony of lay witnesses who testified concerning the facts surrounding the shooting, including the actions and statements of the appellant.

The evidence presented is conflicting regarding appellant's sanity at the time of the shooting; however, it is well established that:

> On murder prosecution, the question of insanity at the time of the commission of the crime, presents a question of fact for the sole determination of the jury, and where there is any evidence tending to support the finding it is not the province of the appellate court to weigh the same. *Nauni v. State*, 670 P.2d 126, 133 (Okl. Cr.1983).

Moreover, this Court will not inquire into the credibility of the witnesses nor weigh conflicting testimony. *Jones v. State*, 479 P.2d 591 (Okl.Cr.1971).

In determining the issue of insanity, the jury must consider all of the evidence presented, not merely the testimony of the expert witnesses, and the weight and credibility of expert opinion is for the jury to determine and such testimony is not conclusive even where it is uncontroverted. *Munn*, at 486. The jury must determine the weight and credibility of both expert and lay witnesses in light of the particular facts and circumstances shown in the case. *Id.*

After carefully considering the record in the instant case, we are of the opinion that there is evidence which supports the jury's conclusion that the appellant could distinguish between right and wrong when she shot the victim. Therefore, this assignment is meritless.

In her final four assignments of error, the appellant contends that the trial court's instructions were not accurate and that they confused the jury. Specifically, appellant argues that the instructions on the defense of insanity, heat of passion manslaughter, second degree murder, and first

degree manslaughter were confusing and contradictory. She further complains that the trial court erroneously failed to instruct the jury on the lesser included offense of misdemeanor manslaughter.

Initially, we note that the appellant did not object to the instructions given and did not submit requested instructions to the trial court. Therefore, this assignment was not properly preserved for appellate review. *Thompson v. State*, 705 P.2d 188 (Okl.Cr.1985).

Moreover, instructions given to the jury are left to the sound discretion of the trial court, and this Court will not reverse a jury conviction where the instructions viewed as a whole, fairly and accurately state the applicable law. *Tate v. State*, 664 P.2d 1036 (Okl.Cr.1983). We have carefully reviewed the record in the instant case and find that the instructions, when read in their entirety, fairly and accurately state the applicable law. These assignments lack merit.

Finding no error warranting reversal or modification, the judgment and sentence is AFFIRMED.

PARKS, P.J., concurs.

BRETT, J., dissents.

BRETT, Judge, dissenting:

Appellant testified that during the struggle she became confused; she thought Robbie was there and that he needed her protection. She felt the need to get away to look for him. The next thing she remembered was hearing a shot; she did not remember firing the gun.

Immediately after the shooting two men disarmed appellant and restrained her until the police arrived. Appellant was unruly and had to be carried up the stairs in the police station. In the station she cried and called for her "mama". She continued to cry and remained non-communicative. Appellant's husband contacted an attorney. The attorney testified that he arrived at the jail at eight o'clock, about forty-five minutes after the shooting. He observed the appellant on the floor of her cell, up against the back wall, in a fetal position. She made no acknowledgement of his presence until he reached down and touched her shoulder; she then tucked into a tighter ball. After fifteen minutes she started mewing like a cat and calling for her mama. She was so deranged and incoherent that the attorney could not communicate with her.

Appellant raised insanity as her defense. Expert testimony indicated that appellant had developed a belief system that she was the only one who could protect her son. In testimony the expert explained that appellant had become pregnant with Robbie and that appellant's mother had tried to force her to get an abortion. Appellant finally agreed, and in a very crude way tried to abort. Once Robbie was born appellant never got over her feelings of guilt for having tried to kill him. Her guilt was intensified by Robbie's emotional problems. Appellant was diagnosed as paranoid with persecution delusions, a schizophrenic psychosis. Robbie was the trigger for her psychotic episodes.

Appellant asserts the State failed to produce sufficient evidence proving beyond a reasonable doubt that appellant was sane at the time of the offense.

The standard of review for sufficiency of the evidence in criminal cases applied by this Court in the past has been whether the State has established a prima facie case. *Jetton v. State*, 632 P.2d 432 (Okl.Cr.1981). Such an approach does not put before the Court the issue of whether the State has met its burden of proof beyond a reasonable doubt.

The United States Supreme Court held that proof beyond a reasonable doubt is vital to due process because it gives "concrete substance" to the presumption of innocence and because it reduces the risk of factual error. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Based on this finding the Court decided in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that due process requires a more stringent appellate

review, a determination of "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S.Ct. at 2789. Joining the majority of other states [1] this Court adopted this standard of review in *Spuehler v. State*, 709 P.2d 202 (Okl.Cr. 1985).

Turning to review of the sufficiency of the evidence in a case where appellant's sanity at the time of the offense is at issue, this Court has traditionally determined whether there was sufficient evidence to raise a reasonable doubt as to the issue. *Ingram v. State*, 620 P.2d 406 (Okl.Cr. 1980). If the evidence was sufficient to shift the burden of proof to the State this Court then applied the following test: "[T]he question of insanity at the time of the commission of the crime, presents a question of fact for the sole determination of the jury, and where there is *any* evidence tending to support the finding it is not the province of the appellate court to weight the same." *Nauni v. State*, 670 P.2d 126, 133 (Okl.Cr.1983) (emphasis added); *see also Dare v. State*, 378 P.2d 339 (Okl.Cr.1963).

Although the first step should remain the same, in light of *Jackson v. Virginia* and *Spuehler v. State*, the second step of review should be whether any rational trier of fact could have found beyond a reasonable doubt proof of sanity at the time of the offense. *Moore v. Duckworth*, 443 U.S. 713, 99 S.Ct. 3088, 61 L.Ed.2d 865 (1979). This Court still reviews the evidence and inferences which may be reasonably drawn therefrom in the light most favorable to the State, at both levels of this two step determination.

The presumption of sanity prevails until the defendant establishes a reasonable doubt as to her sanity. Once the defendant establishes a reasonable doubt as to her sanity, the presumption of sanity vanishes,

and the State must prove beyond a reasonable doubt that the defendant could distinguish between right and wrong. *Munn v. State*, 658 P.2d 482 (Okl.Cr.1983).

In this case I believe that the appellant raised a reasonable doubt as to her sanity at the time of the commission of the crime. Testimony of appellant's abnormal and bizarre behavior before, during, and after the offense came from witnesses from both sides. Appellant's family had a history of psychosis, and her father had been institutionalized. Appellant presented the testimony of a clinical psychologist who had tested her extensively and diagnosed her as psychotic. The expert testified that appellant could not distinguish between right and wrong at the time of the offense as a result of her psychosis.

Given that the State had the burden of proving the appellant's sanity beyond a reasonable doubt, this Court has the duty to determine whether, in the light most favorable to the State, any rational trier of fact could have found sanity beyond a reasonable doubt.

The M'Naghten Rule is the test for insanity in Oklahoma. *Richardson v. State*, 569 P.2d 1018 (Okl.Cr.1977). It states that a person is insane when that person is suffering from such a disability of reason or disease of the mind that he does not know that his acts are wrong and is unable to distinguish right from wrong with respect to his acts, or does not understand the nature and consequences of his acts.[2] OUJI–CR 729.

The State presented the testimony of a clinical psychologist, Dr. Tuel, who did not examine the appellant and did not have access to testimony regarding appellant's behavior at the scene of the crime. He misstated in testimony that "the M'Naghten Rule states that it must be *clearly proven* that the person was suffering from mental disorder at the time of the alleged act so as to be unable to distinguish be-

---

**1.** Note, *Criminal Law: Sufficiency of the Evidence: The Search for A Constitutional Test in Oklahoma,* 38 Okla.L.Rev. 159 (1985).

**2.** This was adequately paraphrased in the instructions to the jury.

tween right and wrong to prevent one from doing the act" (emphasis added); he believed that the defense had the burden of proving insanity. Based on this belief he concluded that he could not assert without a doubt that the defendant was mentally ill. He testified that based on the same test results he did not have sufficient information to make an accurate determination; to make such a diagnosis he personally would require more tests. Such testimony succeeded only to undermine testimony offered by Dr. Quijano, the expert for the defense. Nowhere did Dr. Tuel testify that there was any reason to believe that the appellant was legally sane at the time of the offense.

Dr. Tuel further testified that there is a great danger that insanity may be faked. Evidence was offered to prove that appellant had taken several child psychology courses in preparation for a Masters in Education which she received in 1980. Without anything more, evidence that appellant may have the education to fake insanity is not proof that appellant did fake insanity.

The only evidence present in this case which could possibly tend to prove that the appellant appreciated the wrongfulness of her acts is testimony describing a statement made by appellant at the scene of the crime. After the appellant shot Ms. Quinton, appellant exclaimed, "Oh damn, I shot the wrong bitch!" In the light most favorable to the State it is possible that a rational trier of fact could interpret such a statement as a realization of the wrongfulness of the act on the part of the appellant. From the statements which followed, however, no rational trier of fact could believe that the appellant appreciated the wrongfulness or the consequences of her act. Witnesses heard appellant say, "I don't even know who she was, but go ahead and die, bitch." When the young daughter of the victim said, "You killed my mommie," the appellant retorted, "I will shoot you too." These comments, even when viewed in the light most favorable to the State, do not prove that appellant could distinguish between right and wrong or understood the nature and consequences of her act.

In my view, the evidence that appellant was legally sane at the time of the offense is practically nonexistent. The State had the burden of proving legal sanity beyond a reasonable doubt. At best the State introduced some evidence of sanity, but failed to introduce enough evidence such that a rational trier of fact could find legal sanity beyond a reasonable doubt. Therefore, I respectfully dissent to this decision.