**Daniel C. KISER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–86–475.**

Court of Criminal Appeals of Oklahoma.

Nov. 1, 1989.

As Corrected Nov. 22, 1989.

Rehearing Denied Dec. 5, 1989.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Vice Presiding Judge:

Daniel C. Kiser, Appellant, was tried by jury for the crime of Murder in the First Degree (21 O.S.1981, § 701.7) in Bryan County District Court, Case No. CRF–84–103. The jury returned a verdict of guilty and the trial judge imposed a sentence in

accord with the jury's verdict of life imprisonment. We AFFIRM.

One day after his wife filed for divorce, Appellant went to the home of her boyfriend, Dewey Glen Hines, and killed him with a single shot from a .357 revolver. After firing the fatal shot, Appellant dropped the pistol, fell to his knees and raising his arms cried, "Oh my God". Two police officers responding to Hines' earlier call reporting a prowler and Appellant's wife witnessed the shooting. The central trial issue was whether Appellant was sane at the time of the murder.

■ Appellant first argues the State presented insufficient evidence to prove he was sane. The framework for our inquiry is set forth in *Clark v. State*, 718 P.2d 375 (Okl.Cr.1986). Therein we explained:

> The M'Naghten rule is the test for insanity in Oklahoma. 21 O.S.1981, § 152. The initial burden is on the defendant to establish a reasonable doubt as to his sanity. *Munn v. State*, 658 P.2d 482 (Okl.Cr.1983). If the defendant establishes a reasonable doubt of his sanity, the presumption of sanity vanishes and it is incumbent upon the State to prove beyond a reasonable doubt that the defendant could distinguish between right and wrong at the time of the offense.
>
> .   .   .   .   .
>
> On Murder prosecution, the question of insanity at the time of the commission of the crime, presents a question of fact for the sole determination of the jury, and where there is any evidence tending to support the finding it is not the province of the appellate court to weigh the same. *Nauni v. State*, 670 P.2d 126, 133 (Okl. Cr.1983).
>
> Moreover, this Court will not inquire into the credibility of the witnesses nor weigh conflicting testimony. *Jones v. State*, 479 P.2d 591 (Okl.Cr.1971).
>
> In determining the issue of insanity, the jury must consider all of the evidence presented, not merely the testimony of the expert witnesses, and the weight and credibility of expert opinion is for the jury to determine and such testimony is not conclusive even where it is uncontro-

verted. *Munn*, at 486. The jury must determine the weight and credibility of both expert and lay witnesses in light of the particular facts and circumstances shown in the case.

718 P.2d at 377–8. *See also Walker v. State*, 723 P.2d 273, 283 (Okl.Cr.1986).

In this case, lay witness testimony established the facts surrounding events preceding and immediately following the shooting. Appellant threatened to kill Hines a week before the murder. He threatened to kill himself the night before the shooting. His ex-wife described his anger as not normal. On the night of the murder he asked a neighbor where Hines lived and what kind of car he drove. After he shot Hines, Appellant fell to his knees, raised his hands and cried, "Oh my God." He cried when he saw Hines' body taken away.

Expert testimony from Dr. Garcia, Chief Forensic Psychiatrist at Eastern State Hospital supported the jury's finding that Appellant was sane at the time of the shooting. Dr. Garcia refuted the testimony of Appellant's experts, Dr. Laurel Van Horn, counseling psychologist, who testified she conducted group therapy with the appellant and she believed he did not know right from wrong at the time of the shooting, and psychiatrist Dr. James Behrnan who testified the Appellant acted out of uncontrollable impulses and did not know right from wrong at the time of the shooting. Vigorous cross-examination revealed the weaknesses in the testimony of each of the experts. We find sufficient evidence was presented by which any rational trier of fact could conclude beyond a reasonable doubt that the Appellant was sane at the time he shot Dewey Glen Hines. *See Spuehler v. State*, 709 P.2d 202 (Okl.Cr. 1985). Since we will not reweigh the evidence, we find Appellant's position meritless.

■ The requirement of a post-examination competency hearing pursuant to 22 O.S.1981, § 1175.4 is the subject of Appellant's next proposition of error. Appellant argues the trial court denied him due process by failing to conduct a post-examina-

tion competency hearing. This argument is not supported by the record. The record reveals that on May 2, 1984, the trial court ordered Appellant committed to Eastern State Hospital on the State's motion for a determination of competency. After twenty-five days of examination Appellant was discharged. The staff psychiatrist advised the court by letter that in his opinion Appellant was competent to stand trial. On July 10, 1989, Appellant filed an Application for Determination of Competency and Demand for Jury Trial. The trial court set the matter for hearing. The appellant subsequently, by oral motion, withdrew the application and *asked that the matter be set for preliminary hearing.* The trial court then proceeded with the preliminary hearing and trial. The State was present when Appellant made this motion, and no objection is noted in the record. We find that Appellant waived the competency determination by the court or a jury. Not only did the appellant withdraw his motion for jury trial, but he also requested that the statutorily stayed criminal proceedings resume. The question before us now becomes whether the defendant may affirmatively waive the post-examination competency hearing provided for in 22 O.S.1981, § 1175.4.

This issue was not before us in the leading cases of *Rowell v. State,* 676 P.2d 268 (Okl.Cr.1984) (Rowell I); *Scott v. State,* 730 P.2d 7 (Okl.Cr.1986); or *Kelly v. State,* 735 P.2d 566 (Okl.Cr.1987) wherein we held in effect that failure of a defendant to request the post-examination competency hearing cannot be construed as waiver. The United States Supreme Court reached the same conclusion in *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

Both this Court and the United States Supreme Court have implicitly recognized the ability of a defendant to waive the post-examination competency hearing. In *Rowell v. State,* 699 P.2d 651 (Okl.Cr.1985) (Rowell II), a unanimous court found Rowell had "with the aid and advice of counsel, knowingly waived his right to a hearing to determine his mental competency at the time of trial." *Id.* at 651. This finding was made after we reversed and remanded *Rowell I* for a post-examination competency hearing after the trial court had improperly denied his motion for this hearing. 676 P.2d at 269. In *Pate* the United States Supreme Court implicitly recognized a defendant's ability to waive this procedure when it found that on the submitted record, "we cannot say that Robinson waived the defense of incompetence to stand trial." 383 U.S. at 384, 86 S.Ct. at 841.

There can be no serious disagreement on the principle that conviction of an accused, while that person is legally incompetent, violates due process. *See Pate* at 378, 86 S.Ct. at 838. The post-examination competency hearing is a creature of statute designed to ensure full compliance with the requirements of due process. *See Miller v. State,* 751 P.2d 733 (Okl.Cr.1988). Specifically, we have explained that the purpose of the competency hearing is to determine whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, to make a rational defense, and to understand the proceedings against him rationally and factually. *Campbell v. State,* 636 P.2d 352 (Okl.Cr.1981).

The legislature has made it clear by the plain language of the statute that within the context of the post-examination competency hearing the defendant is presumed competent for the purposes of the allocation of the burden of proof and the burden of going forward with the evidence. 22 O.S.1981, § 1175.4(B). To satisfy this burden, the legislature has given the defendant the right at the post-examination competency hearing to present evidence and cross-examine the witnesses. §§ 1175.4(B), (C). Section 1175.4 provides the defendant with a procedural safeguard to ensure he may assert the defense of present insanity. As such it is designed solely for the defendant's benefit. This Court has held consistently that those rights which are solely for the benefit of the criminal defendant may be waived. *See e.g. Application of Poston,* 281 P.2d 776, 782–83 (Okl.Cr.1955), *Morris v. State,* 363 P.2d 377 (Okl.Cr.1961) (cross-examination); *Davis v. County At-*

*torney, Tulsa County*, 394 P.2d 243 (Okl. Cr.1964) (preliminary hearing); *Frazier v. State*, 654 P.2d 639 (Okl.Cr.1982) (preliminary hearing and jury trial). We find that on the record before us the Appellant waived the post-examination competency hearing. The trial court therefore, properly remanded the case to preliminary hearing.

Appellant next alleges he was denied a fair trial by the trial court's refusal to provide him with State funds to employ an independent psychiatrist to aid in his defense pursuant to *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Appellant's argument is unsupported by the record which clearly reveals he withdrew his application for appointment of a psychiatrist prior to trial. This Court will not consider a position abandoned by Appellant at the trial level. The record further reveals Appellant obtained both a psychologist and a psychiatrist to testify on his behalf. Having obtained this expert assistance, appellant was not prejudiced by the trial court's ruling. Appellant therefore does not come within the scope of *Ake*. *See Brown v. State*, 743 P.2d 133 (Okl.Cr.1987).

■ Appellant also asserts the trial court abused its discretion in denying his Motion for Change of Venue. Appellant's argument is supported by the fact that his first trial ended in a mistrial when, during *voir dire*, one venireman stated:

Yeah, the night of the shooting I went up there. The police officers wouldn't let me in the house, but I could see where the defendant had blown my neighbor away. As far as I'm concerned he's guilty as hell.

(O.R. 131).

This statement was reported in the *Durant Daily Democrat*. Appellant asserts that since this statement caused a mistrial when prospective jurors *heard* it, it also should require a change of venue since prospective jurors *read* it. While Appellant's argument is interesting, it is unsupported by the record. Five veniremen were excused for cause when they indicated they had been influenced by media accounts of the case. (Tr. *Voir dire* 10, 11, 266, 339, 475). Two veniremen stated they had read accounts of the mistrial but had not been influenced by them. (Tr. *Voir dire* 178, 449). The question before us is not whether the jurors were ignorant of this case, but whether they were impartial. *Rushing v. State*, 676 P.2d 842, 848 (Okl.Cr.1984). Appellant has presented no evidence to support his assertion that any juror who sat on his trial was in fact not impartial. The record clearly reflects that each juror who sat on this case stated that no preconceived notions would interfere with the duty to serve as a fair and impartial juror. We therefore, find no abuse of discretion in the trial court denying change of venue. *See Hale v. State*, 750 P.2d 130 (Okl.Cr. 1988).

■ We will next address five propositions of error concerning evidentiary questions. Appellant claims a loaded .25 caliber pistol found in his coat pocket at the time of the shooting was improperly admitted into evidence. Appellant urges this Court to find this pistol was irrelevant and admitted for prejudicial purposes only. We find this pistol was properly admitted into evidence by the trial court. The fact that Appellant was armed with two weapons at the time of the shooting is relevant to the issue of intent, a material fact in issue. *See Ashlock v. State*, 669 P.2d 308 (Okl.Cr. 1983); 21 O.S.1981, § 701.7.

■ Appellant next asserts the trial court erred by excluding from evidence a summary case report prepared by defense expert Dr. James Behrman which he testified from at trial. We disagree. At trial, defense counsel argued the summary was admissible under 12 O.S.1981, § 2803(1), (3) or (4). On appeal Appellant argues the summary is admissible under 12 O.S.1981, § 2803(4) which provides:

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, if reasonably pertinent to diagnosis or treatment.

The question before us is not whether Dr. Behrman's case report is admissible,

but rather whether a summary of the case report is. The summary could have been admitted only by the State during cross-examination under 12 O.S.1981, § 2612. Section 2803(4) does not authorize the admission of summaries of medical reports. The trial court correctly ruled the summary from which Dr. Behrman testified could not be admitted into evidence by the defense.

■ Appellant also asserts the trial court improperly admitted hearsay statements by Appellant's ex-wife, Barbara Ramey. Ramey stated the deceased had told her:

> He said that Dan had called him and had told Glen that we could not work our problems out with Glen involved. He wasn't just, you know, real hateful with him on the phone, this is just gathering from what I was told by Glen. He did threaten him at that time ... it was more or less bodily harm.

(Tr. 48).

The State urges this statement is admissible under 12 O.S.1981, § 2803(3) which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

> . . . . .

> 3. A statement of the declarant's then existing state of mind, emotion, sensation or physical condition, such as intent, plan, motive, design, mental feeling, pain and bodily health.

We find nothing in Ramey's account of Hine's statement that indicates his then existing frame of mind. Admission of this statement over defense objection was error. *See Smith v. State*, 635 P.2d 615 (Okl.Cr.1981). However, considering all the facts and circumstances, as well as the prejudicial effect this statement might have had on the jury, we find admission of this statement did not affect the outcome of the trial and therefore, does not constitute reversible error. *See Id.*

■ Appellant also argues admission of a 3″ × 5″ color photograph of the decedent's upper torso and head showing the fatal bullet wound constituted error.

While admission of a photograph lies within the trial court's discretion, abuse of that discretion may be found only where the evidence is gruesome and the probative value is substantially outweighed by its prejudicial effect. *Moore v. State*, 736 P.2d 161 (Okl.Cr.1987). Such is not the case here. As we explained in *Moore, Id.*, this Court has consistently upheld the admission of photographs which depict the wounds of a homicide victim. The photograph in the instant case corroborated the findings of the medical examiner regarding the victim's wound. It is not a particularly gruesome photograph and its probative value outweighs its prejudicial effect. *See Thompson v. State*, 711 P.2d 936 (Okl.Cr. 1985).

■ Appellant's final evidentiary argument is that the trial court improperly barred Barbara Ramey from expressing her opinion that he was crazy. Barbara Ramey testified extensively regarding Appellant's behavior prior to the shooting. She described in detail Appellant's anger the night prior to the shooting. She testified she had never seen him so angry. In response to defense counsel's question "This wasn't normal anger was it?" "It was strange wasn't it?" Ramey replied, "It was very strange." (Tr. 86–87). The trial court sustained the State's objection when defense counsel asked "In fact, it seemed crazy." Counsel then asked "Was this normal anger?", and Ramey answered, "No." (Tr. 87).

■ Ramey, a lay witness, may testify regarding her opinion of Appellant's sanity only if it is both rationally based on her perception *and* helpful to a clear understanding of her testimony or the determination of a fact in issue. 12 O.S.1981, § 2701. We believe the two pronged test of § 2701 was satisfied. Ramey's opinion was rationally based on her perceptions and her testimony would have been helpful to the determination of Appellant's sanity, a fact in issue. Exclusion of this testimony was error. However, we fail to find that the exclusion of this one response was prejudicial to the Appellant or had any bearing on the verdict. Ramey was allowed to

testify as to all the perceptions which led her to her opinion. She ultimately was able to testify Appellant's behavior was not normal. Her opinion was clearly before the jury. *See Fry v. State*, 529 P.2d 521 (Okl.Cr.1974).

▇▇▇▇▇ Appellant next argues the trial court erred in refusing his requested instruction on the lesser offense of second-degree manslaughter. (21 O.S.1981, § 716). At issue is whether the evidence supports an instruction on this lesser offense. *See Collums v. State*, 654 P.2d 1070 (Okl.Cr.1982). Where the evidence indicates that an appellant intended to shoot the victim, an instruction on second degree manslaughter based on negligence is not proper. *Cowles v. State*, 636 P.2d 342 (Okl. Cr.1981), *Kapocsi v. State*, 668 P.2d 1157 (Okl.Cr.1983). Appellant's argument that the evidence does not indicate he intended to shoot Hines is unsupported by the record. Appellant asked a neighbor where Hines lived. He returned to the neighbor and asked what kind of car Hines drove. He went to Hines' home armed with two loaded pistols. He looked in Hines' window and observed his wife with Hines. After the police arrived he went to Hines' front door and, when Hines opened the door, shot him in the chest. The trial court properly refused this instruction.

Appellant also alleges the trial court improperly instructed the jury concerning the presumption of sanity. Appellant argues the jury was confused by being instructed that the law presumes every person to be sane and that the State must carry the burden to prove beyond a reasonable doubt that the defendant was sane at the time he committed the offense. The trial judge properly instructed the jury. *See Brewer v. State*, 718 P.2d 354 (Okl.Cr.1986). In conjunction with his argument regarding the instruction regarding the presumption of sanity, Appellant argues the prosecutor's closing argument regarding the presumption of sanity was improper. The prosecutor stated:

... The person is presumed sane until a reasonable doubt of his sanity is raised by competent evidence. Reasonable doubt has to exist before the State even has a burden of proving to you beyond a reasonable doubt that the defendant was sane at the time of commission of the crime.

This statement is a fair statement of the burden applicable to this case. *Brewer v. State*, 718 P.2d 354 (Okl.Cr.1986) *cert. denied*, 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 169 (1986).

Finding no error which requires reversal or modification, we AFFIRM the judgment and sentence of the trial court.

BRETT, J., concurs.

PARKS, P.J., and LUMPKIN and Johnson, JJ., specially concur.

Johnson, J., I concur in the special concurrence of Judge Lumpkin.

PARKS, Presiding Justice, specially concurring:

I write separately to address appellant's fourth proposition of error wherein he claims that the trial judge abused his discretion by refusing to grant a change of venue. Unlike *Hale v. State*, 750 P.2d 130 (Okl.Cr.1988), I cannot conclude that appellant has overcome the presumption of a fair and impartial trial due to the fact that he waived four of his peremptory challenges at trial. (Tr. 392, 491, 492). Therefore, I concur in the majority's decision to affirm the judgment and sentence herein.

LUMPKIN, Justice, specially concurring.

I concur in the Court's decision in this case and write to address the discussion relating to the admissibility of the testimony of Barbara Ramey.

The Court determines that the testimony of Barbara Ramey regarding statements by the decedent are not admissible under 12 O.S.1981, § 2803(3). This treatment of the testimony disregards this Court's previous decisions in *Allen v. State*, 675 P.2d 456 (Okl.Cr.1984); *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985); and *Lamb v. State*, 767 P.2d 887 (Okl.Cr.1988). While I agree that this testimony did not affect the out-

**412**

come of the trial, I also believe the testimony was admissible pursuant to 12 O.S.1981, § 2803(3).