**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 27 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DANIEL C. KISER,

      Petitioner-Appellee,

v.

BOBBY BOONE; ATTORNEY
GENERAL OF THE STATE OF
OKLAHOMA,

      Respondents-Appellants.

No. 00-7030
(D.C. No. 97-CV-386-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL, KELLY,** and **LUCERO**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Respondent-appellant Warden Bobby Boone appeals the district court's order granting petitioner-appellee Daniel C. Kiser's habeas corpus petition brought under 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. Background Facts

On the evening of January 9, 1983, one day after his former wife, Barbara Lee, filed for divorce, Mr. Kiser drove to the home of her boyfriend, Dewey Glen Hines, and shot him with a .357 revolver. Prior to the shooting, Mr. Hines had called the police and reported a prowler. When the police arrived, Mr. Kiser was outside the home and the police assumed he was the homeowner. Before the police could investigate further, Mr. Kiser walked to the front door and shot Mr. Hines as he opened the door. The police and Ms. Lee witnessed the shooting. After shooting Mr. Hines, Mr. Kiser dropped the gun, fell to his knees, and cried, "Oh, my God."

In May 1983, Mr. Kiser was confined in Central State Hospital for treatment of extreme depression. He remained there for approximately eleven months. On May 2, 1984, the trial court ordered Mr. Kiser committed to Eastern State Hospital on the state's motion to determine his competency to stand trial. After twenty-five days, Mr. Kiser was released from the hospital as competent to stand trial.

-2-

The main issue at trial was not whether Mr. Kiser had killed Mr. Hines, but whether he was sane at the time. The jury rejected Mr. Kiser's insanity defense and returned a verdict of murder in the first degree. On direct appeal, the Oklahoma Court of Criminal Appeals determined, *inter alia,* that the evidence was sufficient to find Mr. Kiser sane at the time of the shooting. *Kiser v. State*, 782 P.2d 405, 407 (Okla. Crim. App. 1989). Mr. Kiser sought state post-conviction relief, alleging that he had new evidence that the state's expert witness as to his sanity, Dr. Garcia, was himself suffering from a mental illness. Without addressing Mr. Kiser's claim that Dr. Garcia was incompetent to testify, the state court denied relief, concluding that the issue of his sanity had been raised and ruled on in Mr. Kiser's direct appeal.

In his § 2254 federal habeas corpus petition, Mr. Kiser alleged that there was insufficient evidence for the jury to find he was sane at the time of the shooting, and the jury relied on incredible and unreliable testimony from Dr. Garcia. The magistrate judge found that there was insufficient evidence for a jury to find Mr. Kiser sane beyond a reasonable doubt and granted his habeas petition on that basis. The district court adopted the findings and recommendation of the magistrate judge, giving the state 120 days to retry or release Mr. Kiser. The state appeals.

## II. Standard of Review

-3-

The issue before this court on appeal is whether there was sufficient evidence presented at trial to support the jury's verdict that Mr. Kiser was sane at the time he shot Mr. Hines. Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996), a writ of habeas corpus may not be issued with respect to any claim adjudicated on the merits in state court unless that adjudication:

> (1) . . . was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2). [1] Section 2254(e)(1) further requires a habeas court to presume that factual determinations made by the state court are correct, and places the burden on the petitioner to rebut that presumption by clear and convincing evidence. Federal habeas relief may only be granted where

> the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law; decided the case differently than the Supreme Court has on a set of materially indistinguishable facts; or unreasonably applied the governing legal principle to the facts of the prisoner's case.

---

[1] If a claim was not adjudicated on the merits in state court, "and the federal district court made its own determination in the first instance, we review the district court's conclusions of law de novo and its findings of fact, if any, for clear error." *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 (10th Cir. 2000) (quotation omitted).

*Van Woudenberg ex rel. Foor*, 211 F.3d at 566 (*citing Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000)). We must be convinced that the erroneous or incorrect application of the law was also objectively unreasonable. *Williams*, 120 S. Ct. at 1521-23.

### III. Discussion

The *M'Naghten* rule is the test for sanity in Oklahoma. Okla. Stat. tit. 21, § 152. Under this rule,

> [t]he initial burden is on the defendant to establish a reasonable doubt as to his sanity. If the defendant establishes a reasonable doubt of his sanity, the presumption of sanity vanishes and it is incumbent upon the State to prove beyond a reasonable doubt that the defendant could distinguish between right and wrong at the time of the offense.

*Clark v. State*, 718 P.2d 375, 377-78 (Okla. Crim. App. 1986) (internal citation omitted). In Oklahoma, it is well established that the issue of insanity at the time a crime is committed is a question of fact for the jury. *Id.* at 378. "[W]here there is any evidence tending to support the finding it is not the province of the [state] appellate court to weigh the same." *Id.* (quotation omitted).

> In determining the issue of insanity, the jury must consider all of the evidence presented, not merely the testimony of the expert witnesses, and the weight and credibility of expert opinion is for the jury to determine and such testimony is not conclusive even where it is uncontroverted. The jury must determine the weight and credibility of both expert and lay witnesses in light of the particular facts and circumstances shown in the case.

-5-

*Id.*

The defense presented expert testimony from Dr. Laurel Van Horn, a psychologist who had Mr. Kiser in group therapy twice a week during his eleven-month confinement at Central State Hospital following the shooting. Dr. Van Horn testified that, at the time of the shooting, Mr. Kiser "was a borderline personality . . . in the midst of a psychotic decompensation." R. Vol. IV at 659. She further defined the diagnosis as one that

> largely involves unstable emotional behavior, marked shifts, going from very angry to reasonably normal to angry to depressed. Depression is a large component and abandonment depression is a large component of the diagnosis. Compulsive acts is another component of the diagnosis. It's primarily a diagnosis for those people who are extremely vulnerable, to psychotic decompensation under situations of separation and loss.

*Id.* She testified that on the night of the shooting, Mr. Kiser had a "disassociated reaction" rendering him "amnesic" with little or no memory of the events of the shooting. *Id.* at 660-61. She concluded that at the time he shot Mr. Hines, Mr. Kiser was not "in his right mind," could not "distinguish . . . between right and wrong," and was "legally insane." *Id.* at 658.

Dr. James Behrman, a psychiatrist retained by the defense, testified at trial based on his review of Mr. Kiser's hospital records and family history and two personal interviews. He agreed with Dr. Van Horn's assessment that at the time

of the shooting Mr. Kiser did not have control over his actions, did not know right from wrong, and was legally insane. *Id.* Vol. V at 725.

The prosecution's expert witness, Dr. R.D. Garcia,[2] a psychiatrist at Eastern State Hospital, testified that when he saw Mr. Kiser five days after the shooting, he had "no mental disorder." *Id.* at 814. When asked, however, whether he found "any evidence of psychosis," he stated that he found "[d]epression reaching psychotic proportions." *Id.* at 817. He said that Mr. Kiser was "pleading what they call, post-traumatic amnesia," either voluntary or involuntary, and was unable to recall the shooting incident with any specificity. *Id.* at 818. Dr. Garcia testified that he saw Mr. Kiser for approximately two to three hours over a three-week period. When asked whether, in his opinion, Mr. Kiser could distinguish between right and wrong at the time of the shooting, he replied that he did not know because that was not what he was asked to assess. He stated that

---

[2] Mr. Kiser alleged in his habeas petition that Dr. Garcia's testimony should be discounted as unreliable and incredible because Dr. Garcia, himself, was suffering from severe bipolar disorder at the time he testified. As Mr. Kiser points out, this court has previously addressed Dr. Garcia's illness in relation to testimony offered in court. *See Williamson v. Ward*, 110 F.3d 1508, 1519 (10th Cir. 1997) (noting that the record contained affidavits describing Dr. Garcia's behavior as bizarre and stating that, in its severe form, Dr. Garcia's illness could "impair and distort his diagnostic judgment"). Due to our determination in this case that there was insufficient evidence upon which the jury could have found Mr. Kiser sane beyond a reasonable doubt, we have no reason to address the possibility that Dr. Garcia was mentally ill. We also note that Dr. Garcia died in 1986 before his illness could be conclusively diagnosed.

"[i]t would cost you more money if you want me to find out." *Id.* at 821. He opined that it was not the responsibility of a psychiatrist to make that determination, and that he had seen very few cases where insanity could be determined by a psychiatrist who was not present at the time the crime was committed. *Id.* at 822. Moreover, he stated that a defense of "temporary insanity" was "nonsense," and a "cop out."[3] *Id.* at 823, 825. Dr. Garcia testified that the purpose of his examination of Mr. Kiser was to determine whether he was competent to stand trial. *Id.* at 837. Although Dr. Garcia testified that it was possible for Mr. Kiser's depression and "psychotic break" to render him unable to distinguish between right and wrong, *id.* at 839, he did not assess Mr. Kiser's mental state at the time of the shooting, *id.* at 840.

On appeal, the state contends that the testimony of the defense experts, Dr. Van Horn and Dr. Behrman, was weak and inconsistent. Specifically, the state asserts that Dr. Van Horn's testimony was weakened because she did not treat Mr. Kiser on an individual basis, she was new to the profession having been licensed in 1979, she was testifying as an expert for the first time, and she admitted that Mr. Kiser was not being treated with anti-psychotic drugs during his

---

[3]    We note that Dr. Garcia's testimony was often rambling and without cohesiveness. *See, e.g.,* R. Vol. V at 810-11, 825-26. In fact, the prosecutor apologized to the jury during his closing argument for his inability to control Dr. Garcia. *Id.* at 859.

stay at Central State Hospital. The state also challenges Dr. Van Horn's testimony that, although she was unaware of the facts surrounding the shooting incident, they would not alter her opinion.

The state contends that Dr. Behrman's testimony was weakened because his observation of Mr. Kiser was limited to two one-hour interviews and his testimony was based on an "irresistible impulse" theory which is not recognized as a test for insanity in Oklahoma. It argues that his opinion was further eroded when he stated that knowing that Mr. Kiser planned the shooting and showed remorse afterwards could affect his opinion that Mr. Kiser did not know right from wrong at the time of the shooting.

Even if we agree that the testimony of these experts was weakened by these limiting factors, we cannot agree with the state that Dr. Garcia's testimony successfully refuted that of Drs. Van Horn and Behrman. It is true that Dr. Garcia attacked their opinions, but he did so with very little professional credibility. All Dr. Garcia established is a general difference of opinion in the profession as to diagnosis and treatment. He admitted that he had never evaluated Mr. Kiser to determine what his mental state was at the time of the shooting.

Ms. Lee testified that Mr. Kiser was very upset over the pending divorce. Following defense objection and a bench discussion of admissibility, the court allowed Ms. Lee to testify that on January 2, 1983, she had received a telephone

call from Mr. Hines during which he told her that Mr. Kiser had called and threatened him. On January 7, 1983, the day Ms. Lee filed for divorce, she testified that Mr. Kiser came to her house, would not let her leave, pulled the telephone from the wall, was "acting very strange," and threatened to kill himself. R. Vol. III at 513. He had a small gun with him which he kept holding to his head. He remained at her house from 6:30 p.m. to approximately 4:00 a.m. during which period they continued to talk about the divorce. He returned a little later and kicked in the door. At this point, Mr. Kiser wanted Ms. Lee to go with him to Mr. Hines' house so he could "shoot [Mr. Hines] in front of [her]." *Id.* at 517. She managed to calm him down and he eventually left. On cross-examination, she offered that his behavior was "irrational," that he wasn't his normal self, and that he needed mental help. *Id.* at 539. The court sustained the prosecution's objection to Ms. Lee's testimony that Mr. Kiser's behavior appeared "crazy." *Id.* Vol. IV at 549-50. She was, however, allowed to testify that his anger was "abnormal."[4] *Id.*

There was additional lay witness testimony from Mr. Hines' neighbor, Bill Hawkins, indicating that when Mr. Kiser stopped at his house to ask where Mr. Hines lived, he appeared "nice" and "polite." *Id.* at 561. Mr. Hines' friend,

---

[4]  On appeal, the state appellate court concluded that exclusion of Ms. Lee's testimony regarding her opinion of Mr. Kiser's sanity was error, albeit harmless. *Kiser*, 782 P.2d at 410-11.

J.B. Phillips, testified to a conversation he had with Mr. Hines during which Mr. Hines confided his concern about a telephone call from Mr. Kiser threatening to kill him. *Id.* at 567-68. The state asserts that the testimony of Dr. Garcia and the testimony of these lay witnesses was sufficient to rebut the testimony of the two defense experts. We do not agree.

In considering Mr. Kiser's challenge to the sufficiency of the evidence supporting the jury's determination of sanity, the Oklahoma Court of Criminal Appeals noted that lay witness testimony established that Mr. Kiser threatened to kill Mr. Hines a week before the shooting; he threatened to kill himself the night before the shooting; his wife described "his anger as not normal;" he asked a neighbor where Mr. Hines lived and what kind of car he drove; and he exhibited remorse after the shooting. *Kiser*, 782 P.2d at 407. The court found that Dr. Garcia had refuted the testimony of the two defense experts and that "[v]igorous cross-examination revealed the weaknesses in the testimony of each of the experts." *Id.* Declining to reweigh the evidence, the court found Mr. Kiser's sufficiency challenge to be meritless. *Id.*

In recommending that habeas relief be granted, the magistrate judge stated that, although the state appellate court gave great weight to Dr. Garcia's testimony, it was clear that he had not evaluated Mr. Kiser to determine his mental condition at the time of the shooting. The magistrate judge also noted that

-11-

even though the state court found the testimony of the two defense experts to be weakened on cross-examination, it was clear from the record that the two experts continued to maintain that Mr. Kiser was insane at the time of the crime. He also noted that the lay testimony did not address the issue of Mr. Kiser's sanity at the time he shot Mr. Hines.

In Oklahoma, "[t]he State can disprove insanity by lay testimony as well as expert testimony, and it is within the province of the jury to disregard the medical evidence and give greater weight to the lay testimony." *Cheney v. State*, 909 P.2d 74, 86 (Okla. Crim. App. 1995). In *McKenzie v. United States*, 266 F.2d 524, 526-27 (10th Cir. 1959), we said that "[b]efore a non-expert witness is competent to testify to the sanity or insanity of another person, he must show an acquaintance of such intimacy and duration as to clearly indicate that his testimony will be of value in determining the issue." *See also United States v. Madrid*, 673 F.2d 1114, 1123 (10th Cir. 1982); *United States v. Coleman*, 501 F.2d 342, 345 (10th Cir. 1974).

Here, Bill Hawkins offered no opinion as to Mr. Kiser's sanity, but only testified to his very short observation of Mr. Kiser while giving him directions. J.B. Phillips obviously had never met Mr. Kiser and his only testimony was concerning Mr. Hines' recount of a threatening call he received from Mr. Kiser. On the other hand, Ms. Lee's testimony that Mr. Kiser's behavior before and after

the shooting was "strange" and "abnormal" was based on her intimate relationship with Mr. Kiser as his wife. Finally, although Dr. Garcia disagreed with the professional approach of the two defense witnesses, he did not render an opinion as to Mr. Kiser's mental state at the time of the shooting.

Here, we determine that the testimony of Drs. Van Horn and Behrman, whose duty it was to determine Mr. Kiser's mental condition, was overwhelming in light of the state's insufficient and indefinite evidence of his sanity. We conclude that the district court was correct in its determination that there was insufficient evidence to support the jury's determination that Mr. Kiser was sane at the time of the shooting.

Therefore, the judgment of the United States District Court for the Eastern District of Oklahoma, granting Mr. Kiser habeas corpus relief on the issue of his sanity, is AFFIRMED. Mr. Kiser's "Motion By Petitioner/Appellee For Acquittal And To Bar Retrial, To Require Expungement And Sealing Of Records, And To Acquit Petitioner/Appellee Of Bryan County Court Costs And To Require Return To Petitioner/Appellee Of All Court Costs Paid To Bryan County Court" is premature and is therefore DENIED without prejudice subject to refiling in the district court.

Entered for the Court

David M. Ebel
Circuit Judge